AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

LUMBERMENS MUTUAL CASUALTY COMPANY

**SUMMONS IN A CIVIL ACTION**

V.

RGIS INVENTORY SPECIALISTS, LLC, CAMRAC INC. D/B/A ENTERPRISE RENT-A-CAR AND ROBERT M. BIRARDI

CASE NUMBER: 08 CV 01316

**TO:** (Name and address of Defendant)

RGIS Inventory Specialists, LLC
2000 East Taylor Road
Auburn Hills, MI 48328

CAMRAC Inc. d/b/a Enterprise Rent-A-Car
2500 East Main Street
Waterbury, CT 06705-2803

Robert M. Birardi
22 Woods Way
Woodbury, CT 06798

**YOU ARE HEREBY SUMMONED** and required to served on PLAINTIFF'S ATTORNEY (name and address)

Havkins, Rosenfeld, Ritzert & Varriale, LLP
Eleven Penn Plaza, Suite 2101
New York, New York 10001

an answer to the complaint which is served on you with this summons, within 30 days after service of this summons on you, exclusive of the day of service. If you fail do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. Michael McMahon
CLERK

DATE FEB 08 2008

(By) DEPUTY CLERK

JUDGE BAER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

LUMBERMENS MUTUAL CASUALTY COMPANY,

*Plaintiff,*

-against-

RGIS INVENTORY SPECIALISTS, LLC, CAMRAC INC. d/b/a ENTERPRISE RENT-A-CAR and ROBERT M. BIRARDI,

*Defendants.*

-----------------------------------------------------------X

**Index No.:** 08 CV 01316

**DECLARATORY JUDGMENT COMPLAINT**

Plaintiff, LUMBERMENS MUTUAL CASUALTY COMPANY, by its attorneys, HAVKINS ROSENFELD RITZERT & VARRIALE, LLP, as and for its Declaratory Judgment Complaint, respectfully allege the following:

**PARTIES**

1. Plaintiff LUMBERMENS MUTUAL CASUALTY COMPANY, a division of Kemper Insurance Companies (hereinafter collectively referred to as "Kemper"), is a corporation duly organized and existing under the laws of Illinois and has its principal place of business in Illinois. At all times hereinafter mentioned, Kemper was a company engaged in providing its customers with insurance. Kemper did business throughout the United States and was licensed to conduct business in the State of New York.

2. Upon information and belief, defendant RGIS INVENTORY SPECIALISTS, LLC ("RGIS") is a corporation duly organized and existing under the laws of the State of Delaware and has its principal place of business in the State of Michigan. RGIS is in the business of providing inventory, merchandising and staffing solutions to corporate clients.

3. Upon information and belief, defendant CAMRAC INC. d/b/a ENTERPRISE RENT-A-CAR ("CAMRAC") is a corporation duly organized and existing under the laws of the state of Delaware and has its principal place of business in the State of Connecticut. CAMRAC is a rental car company.

4. Upon information and belief, defendant ROBERT M. BIRARDI ("Birardi") is an individual domiciled in the State of Connecticut.

**JURISDICTION**

5. This is a case of actual controversy seeking a declaration pursuant to 28 U.S.C. §2201 of the rights and legal relations of the parties.

6. Jurisdiction is predicated on 28 U.S.C. §1332 in that this is a civil action where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. RGIS is authorized to conduct business in New York. RGIS regularly conducts business in New York, provides services to New York residents and business entities, advertises in New York, derives substantial revenue from its extensive operations in New York and maintains offices in New York

8. RGIS utilized insurance brokers located in New York to obtain insurance coverage. The insurance policy at the center of this dispute, which purportedly provides coverage to RGIS, Birardi and CAMRAC (collectively the "defendants"), was negotiated, underwritten, issued and delivered in New York. Further, the premiums for the policy were paid in New York.

9. Birardi and CAMRAC have made a claim for coverage under the Kemper Insurance policy, which was negotiated, underwritten, issued and delivered in New York.

10. Upon information and belief, CAMRAC solicits business in New York by means of advertisements and other promotional material. Additionally, upon information and belief, CAMRAC derives substantial revenue from interstate commerce, including the rental of vehicles operated in and by residents of New York.

11. Upon information and belief, Birardi performed inventory services in New York. Upon information and belief, Birardi solicited business from prospective clients in New York.

**VENUE**

12. Venue is proper in this District pursuant to 28 U.S.C.1391(a)(2) as a substantial part of the events giving rise to the claim occurred in this jurisdiction.

**THE UNDERLYING ACTION**

13. This declaratory judgment action arises from an underlying action entitled *David Shore as Conservator for Robert Shore* v. *Robert M. Birardi, CAMRAC Inc. (Also Known as Enterprise Rental) and RGIS Inventory Specialists* (the "Shore Action"). The Shore Action arose out of a single car motor vehicle accident involving Robert Shore. A copy of the Complaint filed in the Shore Action is attached as Exhibit "A".

14. On or about February 17, 2005, David Shore, as Conservator for Robert Shore, commenced an action for personal injuries in the Superior Court of Connecticut, Judicial District of Waterbury, under Docket Number CV 054003924. The allegations in the Complaint assert that on April 8, 2003, at approximately 5:48 a.m., Robert Shore was walking west on the

eastbound side of Middlebury Road, Route 64, in Middlebury, Connecticut when he was struck by a 2003 Ford Windstar. The vehicle was operated by Birardi, an employee of RGIS, and was owned by CAMRAC. The Complaint also asserts that the accident was proximately caused by the negligence of Birardi, CAMRAC and RGIS.

15.    Plaintiff allegedly sustained devastating injuries as a result of the accident. Specifically, the plaintiff alleged that he sustained severe and massive head trauma, neurological impairment, loss of the ability to walk, loss of the ability to speak, loss of the ability to eat solid foods, loss of the ability to move and/or manipulate the upper extremities, loss of comprehension and cognitive abilities, closed fractures of the second and third cervical vertebra, compound fracture of the left clavicle, cervical disc bulges with resulting spinal stenosis, intestinal injuries and lacerations, abrasions, bruising and contusions to the face and body.

16.    The Shore Action was tried in the Superior Court of Connecticut, Judicial District of Waterbury, before Justice Bethany Alvord, between January 24, 2008 and January 30, 2008. The trial was bifurcated. At the conclusion of the liability trial, the jury found defendants 100% liable for the accident. The damages trial has not been completed.

## RGIS'S PRIMARY INSURANCE POLICY

17.    On April 8, 2003, RGIS was insured under a Business Automobile Liability Policy issued by United States Fidelity & Guaranty Company ("USF&G") bearing policy number D002A00086, which was effective from October 1, 2002 to October 1, 2003 (the "USF&G Policy").

18.    The USF&G Policy provided **primary coverage** for bodily injury or property damage caused by an automobile accident resulting from the ownership, maintenance or use of a

covered auto up to a maximum of $2,000,000. Specifically, the relevant sections of the USF&G Policy provided:

> **SECTION II – LIABILITY COVERAGE**
>
> **A. Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages.... However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
>
> **SECTION IV – BUSINESS AUTO CONDITIONS**
>
> **B. General Conditions**
>
> **5. Other Insurance**
>
> a. For any covered "auto" you own, this Coverage Form provides primary insurance.

19. Upon information and belief, USF&G also provided insurance coverage, including a defense and indemnity, to Birardi and CAMRAC in the Shore Action.

**<u>RGIS'S EXCESS INSURANCE POLICY</u>**

20. On April 8, 2003, RGIS was insured under an Excess Commercial Catastrophic Liability Policy issued by Lumbermans (the "Kemper Policy"), bearing policy number 9SX130016-03, effective October 1, 2002 to October 1, 2003, and cancelled at the request of RGIS on June 26, 2003.

21. RGIS obtained coverage under the Kemper Policy through a New York insurance broker, Marsh Global Broking. The Kemper Policy was negotiated, issued and delivered in New York. In addition, the Kemper Policy was underwritten in Kemper's New York offices and delivered to RGIS at Marsh's New York offices.

22. The Kemper Policy provided coverage for bodily injury, property damage, personal injury or advertising injury in excess of the limits of the USF&G Policy and had a limit of insurance of $25,000,000 for each occurrence. Specifically, the Kemper Policy provided:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – EXCESS LIABILITY OVER UNDERLYING INSURANCE – INSURING AGREEMENT**
>
> We will pay those sums that the insured becomes legally obligated to pay as damages that would have been payable under the terms of the "Underlying Insurance" because of "bodily injury," "property damage," "personal injury," or "advertising injury," as if the limit of this insurance shown in the Declarations had been added to the applicable limit of insurance under the "Underlying Insurance."
>
> We will pay only the amount in excess of the sums actually payable under the terms of the "Underlying Insurance." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. In the event the duty of the underlying insurer to defend the Insured against a "suit" ceases solely because the applicable limit of insurance is used up in the payment of judgments or settlements, then we shall assume the duty for such defense.

23. The Kemper Policy required its insureds to notify Kemper as soon as practicable of an occurrence or an offense whenever it appeared likely that it would result in a claim involving the Kemper Policy. The Kemper Policy also required its insureds to provide Kemper with written notice of a claim or suit as soon as practicable whenever it appeared likely that such

a claim or suit would involve the Kemper Policy. Specifically, the Kemper Policy contained the following notice provisions:

**SECTION V – COMMERCIAL CATASTROPHE LIABILITY CONDITIONS**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense whenever it appears likely it will result in a claim involving this Coverage Part. Notice should include:

**1)** How, when and where the "occurrence" or offense took place;

**2)** The names and addresses of any injured persons and witnesses; and

**3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim

**b.** If a claim is made or "suit" is brought against any insured, you must:

**1)** Immediately record the specifics of the claim or "suit" and the date received, and

**2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable whenever it appears likely that such claim or "suit" will involve this Coverage Part.

**c.** You and any other involved insured must:

**1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" whenever it appears likely that the claim will involve this Coverage Part or whenever we have assumed the duty to defend you;

**2)** Authorize us upon our request to obtain records and other information;

**3)** Cooperate with us and with the underlying insurer in the investigation or settlement of any claim or defense against the "suit";

4)    Assist us or the underlying insurer upon request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

5)    Comply with all the terms and conditions of any "underlying insurance."

24.    Birardi, RGIS and CAMRAC were cognizant of the occurrence giving rise to the Shore Action on or about April 8, 2003. The incident was reported by Birardi to RGIS on April 8, 2003, at 8:30 a.m. By 9:48 a.m., RGIS had reported the incident to its primary insurer USF&G and Gallagher Bassett Services, Inc., USF&G's third-party administrator ("Gallagher Bassett"). On April 8, 2003, RGIS and Gallagher Bassett secured a statement from Birardi.

25.    Birardi, RGIS and CAMRAC were aware of the severity of Robert Shore's injuries on and shortly after April 8, 2003. Defendants and/or defendants representatives were, or should have been aware, from the outset that a liability verdict in plaintiff's favor was a reasonable possibility.

26.    As early as August of 2004, RGIS, CAMRAC, Gallagher Bassett and Biradri were informed by defense counsel of the estimated verdict value.

27.    In June of 2005, RGIS, CAMRAC and Gallagher Bassett were cognizant of the potential cost of plaintiff's Life Care Plan. This plan projected plaintiff's future medical and rehabilitation costs to be $3,706,132.

28.    On June 21, 2007, RGIS, CAMRAC, Birardi and/or its representatives participated in a mediation conference with counsel for Robert Shore. Kemper was never notified of the mediation, nor was Kemper ever notified of the $9,500,000 initial settlement demand to which $50,000 was offered, or the $7,500,000 counter demand to which $100,000 was offered. Upon information and belief had defendants made an offer that reflected a reasonable assessment of liability, damages, exposure and other relevant factors including the

primary insurer's duty to the excess insurer, Shore would have lowered his demand. Prior to the liability verdict plaintiff's demand remained at $7.5 million. Once the jury returned a verdict on liability, plaintiff's demand was increased to $16 million. Kemper was never invited to participate in settlement negotiations prior to the jury verdict on liability and prior to the commencement of the damages phase of the trial.

29.    On August 6, 2007, defense counsel informed RGIS, CAMRAC, Gallagher Bassett and Birardi that jury selection would commence on January 15, 2008.

30.    Kemper first received notice of the underlying incident and the Shore Action on January 14, 2008, the day before jury selection was to commence, five (5) years after the accident and three (3) years after the commencement of the Shore Action. Kemper received notice, via telephone, from Gallagher Bassett, not from Birardi, RGIS or CAMRAC. Notice from the insureds has never been provided.

31.    Despite defendants' intimate awareness of the fact that this claim and suit may result in a claim under the Kemper Policy, they failed to notify Kemper of the occurrence and suit as soon as practicable.

32.    Kemper has been materially prejudiced by defendants' unexcused delay in providing notice of the underlying claim and the Shore Action. Among other things, as a result of defendants' unexcused delay, Kemper has been denied of its right to interview witnesses, depose witnesses, investigate the claim and accident, collect relevant evidence, retain experts, participate in the legal defense, choose defense counsel, monitor the defense, set reserves, ensure that all legal defenses have been asserted or preserved, and participate and/or engage in settlement negotiations.

**FIRST CAUSE OF ACTION**
**(DECLARATION THAT NO COVERAGE EXISTS**
**DUE TO LATE NOTICE OF CLAIM OR SUIT)**

33. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph "1" through and including paragraph "33" of this Complaint as if fully set forth at length herein.

34. Defendants were aware of the occurrence and of the extent and severity of Robert Shore's injuries on April 8, 2003. Despite this, Kemper was not notified of the accident and the Shore Action until January 14, 2008, the day before jury selection was to commence, over five (5) years after the accident and three (3) years after the Shore Action was filed.

35. The Kemper Policy provided that the insureds must give notice of an occurrence, claim or suit as soon as practicable if it appeared likely that it may involve the Kemper Policy. More specifically, the relevant provision of the Policy stated:

> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense whenever it appears likely it will result in a claim involving this Coverage Part. Notice should include:
>
> **1)** How, when and where the "occurrence" or offense took place;
>
> **2)** The names and addresses of any injured persons and witnesses; and
>
> **3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> Notice of an "occurrence" or offense is not notice of a claim
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:

1)   Immediately record the specifics of the claim or "suit" and the date received, and

2)   Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable whenever it appears likely that such claim or "suit" will involve this Coverage Part.

c.   You and any other involved insured must:

1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" whenever it appears likely that the claim will involve this Coverage Part or whenever we have assumed the duty to defend you;

2)   Authorize us upon our request to obtain records and other information;

3)   Cooperate with us and with the underlying insurer in the investigation or settlement of any claim or defense against the "suit";

4)   Assist us or the underlying insurer upon request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

5)   Comply with all the terms and conditions of any "underlying insurance."

Annexed hereto as Exhibit "B" is a copy of the Kemper Policy.

36.    Birardi failed to notify Kemper of the occurrence, claim or suit as soon as practicable, and therefore, he breached the notice provision of the Kemper Policy, a condition precedent to coverage.

37.    CAMRAC failed to notify Kemper of the occurrence, claim or suit as soon as practicable, and therefore, it breached the notice provision of the Kemper Policy, a condition precedent to coverage.

38. RGIS failed to notify Kemper of the occurrence, claim or suit as soon as practicable, and therefore, it breached the notice provision of the Kemper Policy, a condition precedent to coverage.

39. Accordingly, Birardi, CAMRAC and RGIS are not entitled to coverage under the Kemper Policy.

40. Plaintiff has no adequate remedy at law.

WHEREFORE, Lumbermens Mutual Casualty Company, a division of Kemper Insurance Companies, respectfully requests that the Court issue a judgment declaring that RGIS, CAMRAC and Birardi are not entitled to coverage under the Kemper Policy for any and all of the claims set forth in the Shore Action.

Dated: New York, New York,
February 6, 2008

HAVKINS ROSENFELD
RITZERT & VARRIALE, LLP
*Attorneys for Plaintiff*
*Lumbermens Mutual Casualty Company*

By: ______________________
Gail L. Ritzert (GR6120)
114 Old Country Road, Suite 300
Mineola, New York 11501
(516) 620-1710

# *Exhibit  A*

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

14. As a result of the collision and recklessness of the Defendant Birardi, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

15. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

16. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

17. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to his further loss and damage.

**VI. <u>SIXTH COUNT - STATUTORY RECKLESSNESS AS TO DEFENDANTS ROBERT M. BIRARDI, CAMRAC INC. AND RGIS INVENTORY SPECIALISTS (PERMISSION AND CONSENT AND EMPLOYMENT CONTEXT)</u>**

1. – 11. Paragraphs One through Eleven of Count Five are hereby incorporated by reference and made Paragraphs One through Eleven of this the Sixth Count.

12. The conduct of the Defendant Birardi as described herein indicates a conscious disregard of the rights and/or safety of Plaintiff, and was reckless, exhibiting highly unreasonable conduct involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent in one or more of the following ways:

a. In that he deliberately or with reckless disregard operated the vehicle he was driving at a rate of speed greater than was reasonable, having regard to the width, traffic and

 

use of the highway, the intersection of streets and weather conditions, in violation of Connecticut General Statutes §§ 14-218a and/or 14-219;

b. In that he deliberately or with reckless disregard operated the vehicle he was driving recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions, in violation of Connecticut General Statute § 14-222.

13. The Defendant Birardi's operation of the vehicle in deliberate or reckless disregard in violation of the aforementioned statutes is a substantial factor in causing the Plaintiff's injuries and losses as are hereinafter set forth.

14. As a result of the collision and the recklessness of the Defendant Birardi, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature.

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

f. contusions to his head, right eye and right knee;

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

 

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

 

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

15. As a result of the collision and the recklessness of the Defendant Birardi, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

16. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

17. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

18. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to her further loss and damage.

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P. O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313



RETURN DATE: MARCH 1, 2005
SHORE V. BIRARDI ET AL
FEBRUARY 10, 2005

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

VII. SEVENTH COUNT - NEGLIGENCE AS TO DEFENDANTS ROBERT M. BIRARDI, CAMRAC INC. AND RGIS INVENTORY SPECIALISTS (RENTAL OR LEASING CONTEXT)

1. At all times relevant herein the Plaintiff, ROBERT SHORE, was a resident of the Town of Middlebury in the County of New Haven in the State of Connecticut. He brings this Complaint by and through his conservator, David Shore, his duly appointed conservator.

2. At all times relevant herein the Defendant, ROBERT M. BIRARDI, was a resident of the Town of Woodbury in the County of Litchfield in the State of Connecticut.

3. At all times relevant herein the Defendant, CAMRAC INC. (also known as ENTERPRISE RENTAL) ("CAMRAC") was a foreign corporation duly licensed and authorized to conduct and did in fact conduct business in the State of Connecticut, with an office located at 8 Ella Grasso Turnpike, Windsor Locks, Connecticut, and was licensed to operate and did operate a car leasing and/or rental car business in the State of Connecticut.

4. At all times relevant herein the Defendant, RGIS INVENTORY SPECIALISTS ("RGIS") was a conducting business in the State of Connecticut namely providing retail inventory services with an office located at 525 Wolcott Street, Waterbury, Connecticut, and having employees, agents, or servants operating company vehicles in Connecticut who transacted business in the State of Connecticut selling and/or leasing commercial vehicles to individuals and/or businesses located in Connecticut.

 

MULHARAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

5. On or about April 8, 2003, Middlebury Road (Route 64) in Middlebury, Connecticut, was and has been a public two lane divided highway running in a general east to west direction.

6. On or about April 8, 2003, the Defendant Birardi was the operator of a 2003 Ford Windstar bearing Connecticut registration number 240RUO and owned by Defendants CAMRAC and/or RGIS and leased and/or rented to Defendant Birardi.

7. Pursuant to Connecticut General Statute § 14-154a, the Defendants CAMRAC and/or RGIS, as lessor and/or renter of the vehicle leased and/or rented to the Defendant Birardi, is liable for any damage to the Plaintiff caused by the operation of such motor vehicle while leased, to the same extent as the operator would have been liable if he/she had also been the owner.

8. On or about April 8, 2003 at approximately 5:48 am, the Plaintiff was a pedestrian, and was walking westbound on the side of the eastbound lane of Middlebury Road (Route 64) in Middlebury, Connecticut.

9. On or about April 8, 2003 at approximately 5:48 am, the Defendant Birardi was operating the 2003 Ford Windstar vehicle in an easterly direction on Middlebury Road (Route 64) in Middlebury, Connecticut.

10. At that time and place, the Defendant Birardi suddenly, violently and without warning struck the Plaintiff while he was lawfully walking and thereby caused the Plaintiff to impact the vehicle thereby throwing the Plaintiff violently in the air.

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

11. The collision was due to the negligence and carelessness of the Defendant Birardi in one or more of the following ways:

a. In that he failed to exercise due care to avoid colliding with the pedestrian Plaintiff;

b. In that he failed to sound his horn to avoid a collision with a pedestrian in violation of Connecticut General Statutes § 14-300d;

c. In that he failed to keep a reasonable and proper lookout and to pay attention to where he was going;

d. In that he failed to keep his motor vehicle under proper and reasonable control;

e. In that he failed to turn his vehicle to the left or to the right to avoid a collision, although by a proper and reasonable exercise of his faculties, he could and should have done so;

f. In that he operated his vehicle at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions, and/or in violation of Connecticut General Statutes §§ 14-218a and/or 14-219;

g. In that he operated his vehicle recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions, and/or in violation of Connecticut General Statute § 14-222;

 

141 EAST MAIN STREET • P.O. BOX 2242 • MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

h. In that he failed to apply his brakes in time to avoid a collision although by a proper and reasonable exercise of his faculties, he could and should have done so;

i. In that he operated his motor vehicle without the use of lighted headlights and/or with defective headlights in violation of Connecticut General Statutes § 14-96a.

12. As a result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature:

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

f. contusions to his head, right eye and right knee;

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

 

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

13. As a result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

14. As a further result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

15. As a further result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

16. As a further result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to his further loss and damage

 

RETURN DATE: MARCH 1, 2005
SHORE V. BIRARDI ET AL
FEBRUARY 10, 2005

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

**VIII. EIGHTH COUNT – COMMON LAW RECKLESSNESS AS TO DEFENDANTS ROBERT M. BIRARDI, CAMRAC INC. AND RGIS INVENTORY SPECIALISTS (RENTAL OR LEASING CONTEXT)**

1. – 10. Paragraphs One through Ten of Count Seven are hereby incorporated by reference and made Paragraphs One through Ten of this the Eighth Count.

11. At the time of the collision, the Defendant Birardi was driving at a high rate of speed, accelerating down an incline on dark and unlit slushy, snow covered, wet, black ice road conditions, and failed to apply his brakes leaving no skid marks and without warning or notice violently struck the Plaintiff while he has lawfully walking upon the roadway, throwing the Plaintiff in the air, and thereby causing severe damage to the Plaintiff's person.

12. The conduct of the Defendant Birardi as described herein indicates a conscious disregard of the rights and/or safety of Plaintiff, and was reckless, exhibiting highly unreasonable conduct involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent in one or more of the following ways:

a. In that he deliberately or with reckless disregard operated the vehicle he was driving at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions;

b. In that he deliberately or with reckless disregard operated the vehicle he was driving recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions




RETURN DATE: MARCH 1, 2005
SHORE V. BIRARDI ET AL
FEBRUARY 10, 2005

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MULVAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

13. As a result of the collision and the recklessness of the Defendant Birardi, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature:

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

f. contusions to his head, right eye and right knee;

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;



p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

14. As a result of the collision and recklessness of the Defendant Birardi, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

15. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

 

16. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

17. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to his further loss and damage.

**IX. NINTH COUNT - STATUTORY RECKLESSNESS AS TO DEFENDANTS ROBERT M. BIRARDI, CAMRAC INC. AND RGIS INVENTORY SPECIALISTS (RENTAL OR LEASING CONTEXT)**

1. – 11. Paragraphs One through Eleven of Count Eight are hereby incorporated by reference and made Paragraphs One through Eleven of this the Ninth Count.

12. The conduct of the Defendant Birardi as described herein indicates a conscious disregard of the rights and/or safety of Plaintiff, and was reckless, exhibiting highly unreasonable conduct involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent in one or more of the following ways:

a. In that he deliberately or with reckless disregard operated the vehicle he was driving at a rate of speed greater than was reasonable, having regard to the width, traffic and

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW





use of the highway, the intersection of streets and weather conditions, in violation of Connecticut General Statutes §§ 14-218a and/or 14-219;

b. In that he deliberately or with reckless disregard operated the vehicle he was driving recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions, in violation of Connecticut General Statute § 14-222.

13. The Defendant Birardi's operation of the vehicle in deliberate or reckless disregard in violation of the aforementioned statutes is a substantial factor in causing the Plaintiff's injuries and losses as are hereinafter set forth.

14. As a result of the collision and the recklessness of the Defendant Birardi, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature.

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

f. contusions to his head, right eye and right knee;

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313




g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

 

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

15. As a result of the collision and the recklessness of the Defendant Birardi, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

16. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

17. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

18. As a further result of the collision and the recklessness of the Defendant Birardi, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to her further loss and damage.

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW



RETURN DATE: MARCH 1, 2005
SHORE V. BIRARDI ET AL
FEBRUARY 10, 2005

WHEREFORE, the Plaintiff claims:

1. Money damages as to all Counts;
2. Punitive and/or double and treble damages and/or attorney's fees as to the Second, Fifth and Eighth Counts;
3. Double and/or treble damages pursuant to Connecticut General Statutes § 14-295 as to the Third, Sixth and Ninth Counts;
4. Such other and further relief as this Court may deem equitable.

THE PLAINTIFF
DAVID SHORE AS CONSERVATOR FOR
ROBERT SHORE

BY: [signature]
GWEN E. ADAMSON

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

| RETURN DATE: MARCH 1, 2005 | SUPERIOR COURT |
|---|---|
| DAVID SHORE AS CONSERVATOR FOR ROBERT SHORE | J.D. OF WATERBURY |
| V. | AT WATERBURY |
| ROBERT M. BIRARDI, CAMRAC INC. (ALSO KNOWN AS ENTERPRISE RENTAL) AND RGIS INVENTORY SPECIALISTS | FEBRUARY 10, 2005 |

**STATEMENT OF AMOUNT IN DEMAND**

The amount, legal interest or property in demand in this case is greater than Fifteen Thousand ($15,000.00) Dollars, exclusive of interest and costs.

THE PLAINTIFF
DAVID SHORE AS CONSERVATOR FOR
ROBERT SHORE

BY: Gwen E. Adamson
GWEN E. ADAMSON

# *Exhibit A*

# SUMMONS - CIVIL

(Except Family Actions)
JD-CV-1 Rev. 1-2000
C.G.S. § 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

FEB 17 2005

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.state.ct.us

**INSTRUCTIONS**

1. Type or print legibly: sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

"X" ONE OF THE FOLLOWING: Amount, legal interest or property in demand, exclusive of interest and costs is:

- [ ] less than $2,500
- [ ] $2,500 through $14,999.99
- [x] $15,000 or more

("X" if applicable)

- [ ] Claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

RETURN DATE (Mo., day, yr.) (Must be a Tuesday): 03/01/05

[x] JUDICIAL DISTRICT [ ] HOUSING SESSION [ ] G.A. NO. ____

AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349): Waterbury

CASE TYPE (See JD-CV-1c): Major V Minor 04

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350): 300 Grand St, Waterbury, CT 06702

TELEPHONE NO. (w/area code): (203)591.3300

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code) NOTE: Individuals' Names: Last, First, Middle Initial [ ] Form JD-CV-2 attached | PTY NO. |
|---|---|---|
| FIRST NAMED PLAINTIFF | Shore, David, as Conservator for Robert Shore 31 Triangle Boulevard, Middlebury, CT 06762 | 01 |
| Additional Plaintiff | | 02 |
| FIRST NAMED DEFENDANT | Birardi, Robert M. 22 Woods Way, Woodbury, CT 06798 | 50 |
| Additional Defendant | CAMRAC, Inc. (a/k/a Enterprise Rental) 8 Ella Grasso Tpke, Windsor Locks, CT 06096 | 51 |
| Additional Defendant | AGENT FOR SERVICE: CT Corporation System, One Commercial Plaza, Hartford, CT 06103 | 52 |
| Additional Defendant | RGIS Inventory Specialists, 525 Wolcott Street, Waterbury, CT 06702 | 53 |

## NOTICE TO EACH DEFENDANT

1. **YOU ARE BEING SUED.**
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.
6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. **The Clerk of Court is not permitted to give advice on legal questions.**

DATE: 2/10/05 SIGNED (Sign and "X" proper box): Gwen E. Adamson [x] Comm. of Superior Court [ ] Assistant Clerk

TYPE IN NAME OF PERSON SIGNING AT LEFT: Gwen E. Adamson

**FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:**

NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code): Moynahan Minnella & Tindall, 141 E Main St, Waterbury,CT 06722

TELEPHONE NUMBER: 203.573.1411

JURIS NO. (If atty. or law firm): 039535

NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code): S. Korsko, 141 E Main St, Waterbury, CT 06722

SIGNATURE OF PLAINTIFF IF PRO SE:

| # PLFS. | # DEFS. | # CNTS. | SIGNED (Official taking recognizance; "X" proper box) |
|---|---|---|---|
| 1 | 3 | 9 | Gwen E. Adamson [x] Comm. of Superior Court [ ] Assistant Clerk |

For Court Use Only

FILE DATE

IF THIS SUMMONS IS SIGNED BY A CLERK:

a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

This is a true copy attest:

KENNETH J. CAPALDO
CT STATE MARSHAL

I hereby certify I have read and understand the above: SIGNED (Pro Se Plaintiff) DATE SIGNED

DOCKET NO.



141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

| | |
|---|---|
| RETURN DATE: MARCH 1, 2005 | SUPERIOR COURT |
| DAVID SHORE AS CONSERVATOR FOR ROBERT SHORE | J.D. OF WATERBURY |
| V. | AT WATERBURY |
| ROBERT M. BIRARDI, CAMRAC INC. (ALSO KNOWN AS ENTERPRISE RENTAL) AND RGIS INVENTORY SPECIALISTS | FEBRUARY 10, 2005 |

## COMPLAINT

### I. FIRST COUNT – NEGLIGENCE AS TO DEFENDANT ROBERT M. BIRARDI

1. At all times relevant herein the Plaintiff, ROBERT SHORE, was a resident of the Town of Middlebury in the County of New Haven in the State of Connecticut. He brings this Complaint by and through his conservator, David Shore, his duly appointed conservator.

2. At all times relevant herein the Defendant, ROBERT M. BIRARDI, was a resident of the Town of Woodbury in the County of Litchfield in the State of Connecticut.

3. On or about April 8, 2003, Middlebury Road (Route 64) in Middlebury, Connecticut, was and has been a public two lane divided highway running in a general east to west direction.

4. On or about April 8, 2003, the Defendant was the owner and operator of a 2003 Ford Windstar bearing Connecticut registration 240RUO.

5. On or about April 8, 2003 at approximately 5:48 am, the Plaintiff was a pedestrian, and was walking westbound on the side of the eastbound lane of Middlebury Road (Route 64) in Middlebury, Connecticut.

This is a true copy attest:
KENNETH J. CAPALDO
CT STATE MARSHAL



6. On or about April 8, 2003 at approximately 5:48 am, the Defendant was operating his vehicle in an easterly direction on Middlebury Road (Route 64) in Middlebury, Connecticut.

7. At that time and place, the Defendant suddenly, violently and without warning struck the Plaintiff while he was lawfully walking and thereby caused the Plaintiff to impact the vehicle thereby throwing the Plaintiff violently in the air.

8. The collision was due to the negligence and carelessness of the Defendant in one or more of the following ways:

a. In that he failed to exercise due care to avoid colliding with the pedestrian Plaintiff;

b. In that he failed to sound his horn to avoid a collision with a pedestrian in violation of Connecticut General Statutes § 14-300d;

c. In that he failed to keep a reasonable and proper lookout and to pay attention to where he was going;

d. In that he failed to keep his motor vehicle under proper and reasonable control;

e. In that he failed to turn his vehicle to the left or to the right to avoid a collision, although by a proper and reasonable exercise of his faculties, he could and should have done so;

f. In that he operated his vehicle at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P. O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

weather conditions, and/or in violation of Connecticut General Statutes §§ 14-218a and/or 14-219;

g. In that he operated his vehicle recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions, and/or in violation of Connecticut General Statute § 14-222;

h. In that he failed to apply his brakes in time to avoid a collision although by a proper and reasonable exercise of his faculties, he could and should have done so;

i. In that he operated his motor vehicle without the use of lighted headlights and/or with defective headlights in violation of Connecticut General Statutes § 14-96a.

9. As a result of the collision and the carelessness and negligence of the Defendant, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature:

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

f. contusions to his head, right eye and right knee;

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;



MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

10. As a result of the collision and the carelessness and negligence of the Defendant, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

11. As a further result of the collision and the carelessness and negligence of the Defendant, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

12. As a further result of the collision and the carelessness and negligence of the Defendant, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

13. As a further result of the collision and the carelessness and negligence of the Defendant, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to his further loss and damage.

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

II. SECOND COUNT – COMMON LAW RECKLESSNESS AS TO DEFENDANT ROBERT M. BIRARDI

1. – 7. Paragraphs One through Seven of Count One are hereby incorporated by reference and made Paragraphs One through Seven of this the Second Count.

8. At the time of the collision, the Defendant was driving at a high rate of speed, accelerating down an incline on dark and unlit slushy, snow covered, wet, black ice road conditions, and failed to apply his brakes leaving no skid marks and without warning or notice violently struck the Plaintiff while he has lawfully walking, throwing the Plaintiff in the air, and thereby causing severe damage to the Plaintiff's person.

9. The conduct of the Defendant as described herein indicates a conscious disregard of the rights and/or safety of Plaintiff, and was reckless, exhibiting highly unreasonable conduct involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent in one or more of the following ways:

a. In that he deliberately or with reckless disregard operated the vehicle he was driving at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions;

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

b. In that he deliberately or with reckless disregard operated the vehicle he was driving recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions.

10. As a result of the collision and the recklessness of the Defendant, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature:

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

f. contusions to his head, right eye and right knee;

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

 

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

11. As a result of the collision and recklessness of the Defendant, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

12. As a further result of the collision and the recklessness of the Defendant, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

13. As a further result of the collision and the recklessness of the Defendant, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

14. As a further result of the collision and the recklessness of the Defendant, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to his further loss and damage.

## III. THIRD COUNT – STATUTORY RECKLESSNESS AS TO DEFENDANT ROBERT M. BIRARDI

1. – 8. Paragraphs One through Eight of Count Two are hereby incorporated by reference and made Paragraphs One through Eight of this the Third Count

9. The conduct of the Defendant as described herein indicates a conscious disregard of the rights and/or safety of Plaintiff, and was reckless, exhibiting highly unreasonable conduct




MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent in one or more of the following ways:

a. In that he deliberately or with reckless disregard operated the vehicle he was driving at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions, in violation of Connecticut General Statutes §§ 14-218a and/or 14-219;

b. In that he deliberately or with reckless disregard operated the vehicle he was driving recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions, in violation of Connecticut General Statute § 14-222.

10. The Defendant's operation of the vehicle in deliberate or reckless disregard in violation of the aforementioned statutes is a substantial factor in causing the Plaintiff's injuries and losses as are hereinafter set forth.

11. As a result of the collision and the recklessness of the Defendant, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature.

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

f. contusions to his head, right eye and right knee;

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

12. As a result of the collision and the recklessness of the Defendant, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

13. As a further result of the collision and the recklessness of the Defendant, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

14. As a further result of the collision and the recklessness of the Defendant, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.




141 EAST MAIN STREET • P. O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

15. As a further result of the collision and the recklessness of the Defendant, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to her further loss and damage.

## IV. FOURTH COUNT - NEGLIGENCE AS TO DEFENDANTS ROBERT M. BIRARDI, CAMRAC INC. AND RGIS INVENTORY SPECIALISTS (PERMISSION AND CONSENT AND EMPLOYMENT CONTEXT)

1. At all times relevant herein the Plaintiff, ROBERT SHORE, was a resident of the Town of Middlebury in the County of New Haven in the State of Connecticut. He brings this Complaint by and through his conservator, David Shore, his duly appointed conservator.

2. At all times relevant herein the Defendant, ROBERT M. BIRARDI, was a resident of the Town of Woodbury in the County of Litchfield in the State of Connecticut.

3. At all times relevant herein the Defendant, CAMRAC INC. (also known as ENTERPRISE RENTAL) ("CAMRAC") was a foreign corporation duly licensed and authorized to conduct and did in fact conduct business in the State of Connecticut, with an office located at 8 Ella Grasso Turnpike, Windsor Locks, Connecticut, and having employees, agents, or servants operating company vehicles in Connecticut.

4. At all times relevant herein the Defendant, RGIS INVENTORY SPECIALISTS ("RGIS") was a foreign corporation conducting business in the State of Connecticut namely providing

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

retail inventory services with an office located at 525 Wolcott Street, Waterbury, Connecticut, and having employees, agents, or servants operating company vehicles in Connecticut.

5. On or about April 8, 2003, the Defendant Birardi was an agent, servant and/or employee of the Defendants CAMRAC and/or RGIS and he operated the 2003 Ford Windstar bearing Connecticut registration 240RUO, as an authorized driver with the express or implied permission of the Defendants CAMRAC and/or RGIS, and within the course and scope of his agency and/or employment.

6. On or about April 8, 2003, Middlebury Road (Route 64) in Middlebury, Connecticut, was and has been a public two lane divided highway running in a general east to west direction.

7. On or about April 8, 2003, the Defendants CAMRAC and/or RGIS were the owners of the 2003 Ford Windstar bearing Connecticut registration number 240RUO, which the Defendant Birardi was operating.

8. On or about April 8, 2003 at approximately 5:48 am, the Plaintiff was a pedestrian, and was walking westbound on the side of the eastbound lane of Middlebury Road (Route 64) in Middlebury, Connecticut.

9. On or about April 8, 2003 at approximately 5:48 am, the Defendant Birardi was operating the 2003 Ford Windstar vehicle in an easterly direction on Middlebury Road (Route 64) in Middlebury, Connecticut.

 

10. At that time and place, the Defendant Birardi suddenly, violently and without warning struck the Plaintiff while he was lawfully walking and thereby caused the Plaintiff to impact the vehicle thereby throwing the Plaintiff violently in the air.

11. The collision was due to the negligence and carelessness of the Defendants CAMRAC's and/or RGIS's employee, agent or servant, Defendant Birardi, in one or more of the following ways:

a. In that he failed to exercise due care to avoid colliding with the pedestrian Plaintiff;

b. In that he failed to sound his horn to avoid a collision with a pedestrian in violation of Connecticut General Statutes § 14-300d;

c. In that he failed to keep a reasonable and proper lookout and to pay attention to where he was going;

d. In that he failed to keep his motor vehicle under proper and reasonable control;

e. In that he failed to turn his vehicle to the left or to the right to avoid a collision, although by a proper and reasonable exercise of his faculties, he could and should have done so;

f. In that he operated his vehicle at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

weather conditions, and/or in violation of Connecticut General Statutes §§ 14-218a and/or 14-219;

g. In that he operated his vehicle recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions, and/or in violation of Connecticut General Statute § 14-222;

h. In that he failed to apply his brakes in time to avoid a collision although by a proper and reasonable exercise of his faculties, he could and should have done so;

i. In that he operated his motor vehicle without the use of lighted headlights and/or with defective headlights in violation of Connecticut General Statutes § 14-96a.

12. As a result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature:

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

f. contusions to his head, right eye and right knee;

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

p. chronic ethmoidal sinusitis;

q. missing and damaged teeth;

r. compound fracture of left clavicle;

s. disc bulges in cervical region with resulting spinal stenosis;

t. neurological impairment;

u. impairment and/or loss of the ability to walk and move about independently;

v. impairment and/or loss of the ability to speak;

w. impairment and/or loss of the ability to eat solid foods;

 

141 EAST MAIN STREET • P. O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313
MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW

x. impairment and/or loss of the ability to move and/or manipulate upper extremities;

y. impairment and/or loss of comprehension and cognitive abilities; and

z. pain and suffering.

13. As a result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff sustained severe and permanent injuries to his bones, glands, blood vessels, ligaments, soft tissues, tendons, cartilage and nerves.

14. As a further result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff has expended large sums of money for medical and surgical treatment, nursing and hospital treatment, physical therapy, medicines, braces and other apparatus, and may incur additional expenses in the future, all to his further loss and damage.

15. As a further result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff had to undergo and will undergo in the future, surgical procedures, hospitalization, medical care, x-rays, diagnostic procedures, therapeutic expenses, chiropractic care, medications and medical devices, with rest and restriction of activities and other medically related treatments.

16. As a further result of the collision and the carelessness and negligence of the Defendant Birardi, the Plaintiff has been deprived of his ability to carry on and enjoy all of life's activities, all to his further loss and damage.

 

MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW
141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

**V. FIFTH COUNT – COMMON LAW RECKLESSNESS AS TO DEFENDANTS ROBERT M. BIRARDI, CAMRAC INC. AND RGIS INVENTORY SPECIALISTS (PERMISSION AND CONSENT AND EMPLOYMENT CONTEXT)**

1. – 10. Paragraphs One through Ten of Count Four are hereby incorporated by reference and made Paragraphs One through Ten of this the Fifth Count.

11. At the time of the collision, the Defendant Birardi was driving at a high rate of speed, accelerating down an incline on dark and unlit slushy, snow covered, wet, black ice road conditions, and failed to apply his brakes leaving no skid marks and without warning or notice violently struck the Plaintiff while he has lawfully walking upon the roadway, throwing the Plaintiff in the air, and thereby causing severe damage to the Plaintiff's person.

12. The conduct of the Defendant Birardi as described herein indicates a conscious disregard of the rights and/or safety of Plaintiff, and was reckless, exhibiting highly unreasonable conduct involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent in one or more of the following ways:

a. In that he deliberately or with reckless disregard operated the vehicle he was driving at a rate of speed greater than was reasonable, having regard to the width, traffic and use of the highway, the intersection of streets and weather conditions;

b. In that he deliberately or with reckless disregard operated the vehicle he was driving recklessly having regard to the width, traffic and use of such highway, the intersection of streets and weather conditions

 

141 EAST MAIN STREET • P.O. BOX 2242 • WATERBURY, CONNECTICUT 06722-2242 • MOYNAHAN, MINNELLA & TINDALL, LLC • ATTORNEYS AT LAW • (203) 573-1411 • JURIS NO. 39535 • FAX NO. (203) 757-9313

13. As a result of the collision and the recklessness of the Defendant Birardi, the Plaintiff suffered the following serious and painful injuries, some of which may be permanent in nature:

a. severe and massive head trauma resulting in a comatose state and prolonged unconsciousness;

b. intestinal injuries;

c. severe injuries to his neck;

d. severe injuries to his back;

e. lacerations, abrasions, bruising and contusions to his face and body;

f. contusions to his head, right eye and right knee;

g. convulsions;

h. pneumonia and infection;

i. closed fracture of second cervical vertebra;

j. closed fracture of third cervical vertebra;

k. hyposmolality and/or hyponatremia;

l. pulmonary insufficiency following trauma and surgery;

m. open wound to shoulder region;

n. open wounds to face and jaw;

o. chronic spehnoidal sinusitis;

# *Exhibit B*



# COMMERCIAL CATASTROPHE LIABILITY POLICY

LUMBERMENS
MUTUAL
CASUALTY
COMPANY
A mutual insurance company,
herein called the Company, or LMC

Home Office: (847) 320-3237
1 Kemper Drive
Long Grove, IL 60049-0001

The company providing the insurance afforded in each Coverage Part of the policy is designated in the Common Policy Declarations Page. If such company is a mutual company, the insured is hereby notified that by virtue of this policy he is a member of the company so designated and is entitled to vote either in person or by proxy at any and all meetings of the company.

AMERICAN
MOTORISTS
INSURANCE
COMPANY
A stock insurance company,
herein called the Company, or AMICO

Home Office: (847) 320-3237
1 Kemper Drive
Long Grove, IL 60049-0001

AMERICAN
MANUFACTURERS
MUTUAL
INSURANCE
COMPANY
A mutual insurance company,
herein called the Company, or AMM

Home Office: (847) 320-3237
1 Kemper Drive
Long Grove, IL 60049-0001

AMERICAN
PROTECTION
INSURANCE
COMPANY
A stock insurance company,
herein called the Company, or AMPICO

Home Office: (847) 320-3237
1 Kemper Drive
Long Grove, IL 60049-0001

The annual meeting of the Lumbermens Mutual Casualty Company is held at its home office in Long Grove, IL, on the third Tuesday in May of each year at eleven o'clock A.M.

The annual meeting of the American Manufacturers Mutual Insurance Company is held at its home office in Long Grove, IL, on the third Tuesday in May of each year at nine o'clock A.M.

# COMMON POLICY CONDITIONS

This policy is composed of the jacket pages, the Declarations, these conditions, and additional provisions and conditions of the Coverage Form (including all its forms and endorsements) indicated in the Declarations.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy only with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

# NUCLEAR ENERGY LIABILITY EXCLUSIONS (Broad Form)

This exclusion modifies the provisions of the policy relating to ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY, COMMERCIAL CATASTROPHE, AND MEDICAL PAYMENTS INSURANCE but does not apply to automobiles principally garaged or used in the State of New York.

A. The insurance does not apply:

1. Under any Liability Coverage, to "bodily injury" or "property damage":

   a. With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

   a. The "nuclear material" a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or b) has been discharged or dispersed therefrom:

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property thereat.

B. As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "special nuclear material" or "by-product material";

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

1. Any "nuclear reactor";

2. Any equipment or device designed or used for 1) separating the isotopes of uranium or plutonium, 2) processing or utilizing "spent fuel," or 3) handling, processing or packaging "waste";

3. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

As respects the Company previously designated in the Declarations Page, the following correlative provision forms a part of this policy:

MUTUAL POLICY CONDITIONS. **Lumbermens Mutual Casualty Company**
**American Manufacturers Mutual Insurance Company**

This is a perpetual mutual corporation owned by and operated for the benefit of its members. This is a non-assessable, participating policy under which the Board of Directors in its discretion may determine and pay unabsorbed premium deposit refunds (dividends) to the insured.

As respects the State of Texas, such provision is amended to read as follows:

**Mutuals -- Membership and Voting Notice.** The insured is notified that by virtue of this policy he is a member of the company so designated, and is entitled to vote either in person or by proxy at any and all meetings of said company. The Annual Meetings are held in its Home Office at the place and time stated on the front cover.

**Mutuals -- Participation Clause Without Contingent Liability.** No Contingent Liability: This policy is non-assessable. The policyholder is a member of such company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

DIVIDENDS. **American Motorists Insurance Company**
**American Protection Insurance Company**

This policy is participating and shall be entitled to receive unabsorbed premium deposit refunds as apportioned by the directors.

IN WITNESS WHEREOF, the Company designated in the Declarations Page has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of the Company at the agency hereinbefore mentioned.

**LUMBERMENS MUTUAL CASUALTY COMPANY**
**AMERICAN MOTORISTS INSURANCE COMPANY**

John U. Conway
Secretary

William D. Smith
President

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY**

John U. Conway
Secretary

Robert A. Lindemann
President

**AMERICAN PROTECTION INSURANCE COMPANY**

John U. Conway
Secretary

Gary J. Tully
President



☒ LUMBERMENS MUTUAL CASUALTY COMPANY (LMC)
☐ AMERICAN MOTORISTS INSURANCE COMPANY (AMICO)
☐ AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY (AMM)
☐ AMERICAN PROTECTION INSURANCE COMPANY (AMPICO)
Long Grove, IL 60049-0001 Phone: (847) 320-3237

The company providing the insurance afforded by this policy is that indicated above.

# COMMERCIAL CATASTROPHE LIABILITY COVERAGE PART DECLARATIONS

1. **NAMED INSURED:**
RGIS INVENTORY SPECIALISTS
2000 E. TAYLOR ROAD
AUBURN HILLS, MI 48328

**POLICY NUMBER:** 9SX 130016-03

35602

2. **THE NAMED INSURED IS:** PARTNERSHIP

3. **POLICY PERIOD:** FROM 10/01/2002 TO 10/01/2003
12:01 A.M. Standard Time at your mailing address.
PRIOR POLICY NO. 9SX 129237-02

4. **LIMITS OF INSURANCE:**

| | |
|---|---|
| EACH OCCURRENCE | $25,000,000 |
| GENERAL AGGREGATE | $25,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE | $25,000,000 |
| RETAINED LIMIT | $****10,000 |

5. **FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**
SEE FORM IL7812 FOR SCHEDULE OF FORMS AND ENDORSEMENTS

6. **TOTAL COVERAGE PART PREMIUM:**
BASIS OF PREMIUM: FLAT
ADVANCE PREMIUM:

ANNUAL MINIMUM PREMIUM: $****511,000
POLICY MINIMUM PREMIUM:

7. **PRODUCER INFORMATION:**
MARSH GLOBAL BROKING
1166 AVENUE OF THE AMERICAS
NEW YORK, NY 10036
38-3656

COUNTERSIGNATURE:
DATE: 04/17/2003

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| CC7205 (ED. 09-00) | COMMERCIAL CATASTROPHE DECLARATIONS PAGE |
| CC7900 (ED. 11-98) | COMMERCIAL CATASTROPHE LIABILITY POLICY JACKET |
| CC7000 (ED. 08-94) | COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM |
| CC7649 (ED. 09-00) | NAMED INSURED ENDORSEMENT |
| CC7639 (ED. 09-00) | EMPLOYMENT RELATED PRACTICES EXCLUSION |
| CC7640 (ED. 09-00) | ERISA EXCLUSION |
| CC7651 (ED. 09-00) | SECURITIES AND FINANCIAL INTEREST EXCLUSION |
| CC7618 (ED. 12-96) | CHANGES TO PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE B |
| CC7653 (ED. 05 98) | FOREIGN LIABILITY FOLLOWING FORM |
| CC7616 (ED. 01 96) | MICHIGAN CHANGES |
| CC7636 (ED. 02-01) | AUTOMOBILE LIABILITY FOLLOWING FORM |
| CC7637 (ED. 09-00) | CANCELLATION NOTICE |
| CC7648 (ED. 09-00) | NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT |
| CC7749 (ED. 05-01) | AMENDMENT OF INSURING AGREEMENT--KNOWN INJURY OR DAMAGE |
| IL 7050 (ED. 01 96) | MICHIGAN CHANGES -- CANCELLATION AND NON-RENEWAL |

All other terms and conditions of this policy remain unchanged.

# COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM SCHEDULE

POLICY NUMBER 9SX 130016-03

SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | APPLICABLE LIMITS | |
|---|---|---|
| **Commercial General Liability Insurance (US and Puerto Rico):** | | |
| General Aggregate Limit (other than Products-Completed Operations): | $2,000,000. | |
| Products-Completed Operations Aggregate Limit: | $1,000,000. | |
| Personal and Advertising Injury Limit: | $1,000,000. | |
| Each Occurrence Limit: | $1,000,000. | |
| Employee Benefits Liability Limit: | $ 1,000,000. | each claim |
| Employee Benefits Liability Limit: | $ 1,000,000. | aggregate |
| Stop-Gap: | $ 1,000,000. | each person |
| Stop-Gap: | $ 1,000,000. | each occurrence |
| Insurer: Zurich Insurance Company<br>Policy Number: TBA | Policy Term: From 10/01/2002 TO 10/01/2003 | |
| **Commercial General Liability Insurance (Canada):** | | |
| Each Occurrence Limit: | $1,000,000. | |
| Products-Completed Operations Aggregate Limit: | $1,000,000. | |
| Insurer: Lombard General<br>Policy Number: TBA | Policy Term: From 10/01/2002 TO 10/01/2003 | |
| **Commercial General Liability Insurance (Marc Properties):** | | |
| Each Occurrence Limit: | $1,000,000. | |
| General Aggregate Limit: | $2,000,000. | |
| Insurer: Frankenmuth Mutual<br>Policy Number: TBA | Policy Term: From 05/13/2002 TO 05/13/2003 | |
| **Commercial General Liability Insurance (Foreign):** | | |
| Products-Completed Operations Aggregate Limit: | $ 1,000,000. | |
| Each Occurrence Limit: | $ 1,000,000. | |
| Employee Benefits Liability Limit: | $ 1,000,000. | each claim |
| Employee Benefits Liability Limit: | $ 1,000,000. | aggregate |
| Insurer: Chubb<br>Policy Number: 73209613 | Policy Term: From 10/01/2002 TO 10/01/2003 | |

# COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM SCHEDULE

POLICY NUMBER 9SX 130016-03

SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | APPLICABLE LIMITS |
|---|---|
| **Commercial Automobile Liability Insurance:** | |
| Combined Single Limit: | $1,000,000 each accident |
| Non-Owned included / Hired Auto included | |
| Insurer: Zurich Insurance Company<br>Policy Number: TBA | Policy Term: From 10/01/2002 TO 10/01/2003 |
| **Commercial Automobile Liability Insurance (Texas Only):** | |
| Combined Single Limit: | $1,000,000 each accident |
| Non-Owned included / Hired Auto included | |
| Insurer: Zurich Insurance Company<br>Policy Number: TBA | Policy Term: From 10/01/2002 TO 10/01/2003 |
| **Commercial Automobile Liability Insurance (Virginia and Hawaii Only)** | |
| Combined Single Limit: | $1,000,000 each accident |
| Non-Owned included / Hired Auto included | |
| Insurer: Zurich Insurance Company<br>Policy Number: TBA | Policy Term: From 10/01/2002 TO 10/01/2003 |
| **Commercial Automobile Liability Insurance (Canada):** | |
| Combined Single Limit: | $1,000,000 each accident |
| Non-Owned included / Hired Auto included | |
| Insurer: Lombard General<br>Policy Number: TBA | Policy Term: From 10/01/2002 TO 10/01/2003 |

# COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM SCHEDULE

POLICY NUMBER 9SX 130016-03

SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | | APPLICABLE LIMITS |
|---|---|---|
| **Commercial Automobile Liability Insurance (Foreign):** | | |
| Combined Single Limit: | | $1,000,000 each accident |
| Non-Owned included / Hired Auto included | | |
| Insurer: Chubb Insurance Company<br>Policy Number: 73209613 | | Policy Term: From 10/01/2002 TO 10/01/2003 |
| **Standard Workers Compensation and Employers Liability Policy:** | | |
| Coverage B: | Bodily Injury By Accident | $1,000,000 each accident |
| | Bodily Injury By Disease | $1,000,000 each employee / Disease |
| | Bodily Injury By Disease | $1,000,000 aggregate / Disease |
| Insurer: Zurich Insurance Company<br>Policy Number: TBA | | Policy Term: From 10/01/2002 TO 10/01/2003 |

# COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

## TABLE OF CONTENTS

This Table of Contents is only intended as a guide to assist reference to the various insurance provisions of the Commercial Catastrophe Liability Coverage Form, in order of their appearance. Please refer to the Declarations for this Coverage Part and the Commercial Catastrophe Liability Coverage Form for complete coverage details.

**SECTION I -- COVERAGES** — **Page No.**

Coverage A -- Excess Liability Over Underlying Insurance -- Insuring Agreement ....... 1

Coverage B -- Excess Liability Over Retained Limit -- Insuring Agreement ....... 1

Supplementary Payments ....... 2

Exclusions

1. With Respect to Coverage A and Coverage B ....... 2
2. With Respect to Coverage A Only ....... 3
3. With Respect to Coverage B Only ....... 5

**SECTION II -- WHEN THIS INSURANCE APPLIES** ....... 8

**SECTION III -- WHO IS AN INSURED** ....... 9

**SECTION IV -- LIMITS OF INSURANCE** ....... 11

**SECTION V -- COMMERCIAL CATASTROPHE LIABILITY CONDITIONS** ....... 11

**SECTION VI -- DEFINITIONS** ....... 14

# COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI – DEFINITIONS.

## SECTION I -- COVERAGES

### COVERAGE A -- EXCESS LIABILITY OVER UNDERLYING INSURANCE – INSURING AGREEMENT

We will pay those sums that the insured becomes legally obligated to pay as damages that would have been payable under the terms of the "underlying insurance" because of "bodily injury," "property damage," "personal injury" or "advertising injury," as if the limit of this insurance shown in the Declarations had been added to the applicable limit of insurance under the "underlying insurance."

We will also pay those sums that the insured becomes legally obligated to pay as damages that would have been payable under the terms and conditions of the underlying Employee Benefit Liability Coverage, if provided by "underlying insurance," as if the limit of this insurance shown in the Declarations had been added to the limit of insurance under the underlying Employee Benefit Liability Coverage.

We will pay only the amount in excess of the sums actually payable under the terms of the "underlying insurance." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. In the event the duty of the underlying insurer to defend the insured against a "suit" ceases solely because the applicable limit of insurance is used up in the payment of judgments or settlements, then we shall assume the duty for such defense. But:

1. The amount we will pay is limited as described in SECTION IV – LIMITS OF INSURANCE;
2. This insurance only applies to "bodily injury," "property damage," "personal injury" and "advertising injury" described in SECTION II – WHEN THIS INSURANCE APPLIES;
3. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result;
4. If for any reason we are prevented from performing our duty to defend the insured against any "suit," we will reimburse the insured for any expense incurred at our request or with our written consent;
5. Our duty to defend or reimburse the insured ends when we have used up the limit of insurance available under this Coverage Part in the payment of judgments or settlements under Coverages A and B combined; and
6. We will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

### COVERAGE B – EXCESS LIABILITY OVER RETAINED LIMIT -- INSURING AGREEMENT

1. We will pay those sums that the insured becomes legally obligated to pay as damages, because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies, but only if "underlying insurance" does not apply.

   We will pay only the amount in excess of "Retained Limit." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. With respect to "bodily injury," "property damage," "personal injury" or "advertising injury" for which there is no other insurance in any way applicable, we will have the right and duty to defend the insured against any "suit" seeking damages. But:

a) The amount we will pay is limited as described in SECTION IV -- LIMITS OF INSURANCE;

b) This insurance applies only to "bodily injury," "property damage," "personal injury" and "advertising injury" described in SECTION II -- WHEN THIS INSURANCE APPLIES;

c) We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result;

d) If for any reason we are prevented from performing our duty to defend the insured against any "suit," we will reimburse the insured for any expense incurred at our request or with our written consent;

e) Our right and duty to defend end when we have used up the limit of insurance available under this Coverage Part in the payment of judgments or settlements under Coverages A and B combined; and

f) We will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

2. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" may take place anywhere in the world.

3. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

4. This insurance applies to "personal injury" only if caused by an offense:

a) Committed anywhere in the world; and

b) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

5. This insurance applies to "advertising injury" only if caused by an offense committed:

a) Anywhere in the world; and

b) In the course of advertising your goods, products or services.

**SUPPLEMENTARY PAYMENTS**

We will pay with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

4. All costs taxed against the insured in the "suit."

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**EXCLUSIONS**

1. **With respect to Coverage A and Coverage B, this insurance does not apply to:**

a. **Auto First Party Coverage**

Any obligation imposed on the insured under any uninsured motorist, underinsured motorist, automobile nofault law, or any similar law.

b. **Statutory Obligations to Employees**

Any obligation imposed on the insured under any workers compensation, occupational disease, disability benefits, unemployment compensation, or any similar law.

c.   **Damage to Property**

"Property damage" to:

1)   Property you own, rent or occupy;

2)   Property you transport;

3)   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

4)   Property loaned to you;

5)   Personal property in the care, custody or control of the insured;

6)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

7)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph 3) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 2), 4), 5), 6) and 7) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs 4), 5) and 7) of this exclusion do not apply to "property damage" arising out of the use of an elevator at premises you own, rent or occupy.

Paragraph 7) of this exclusion does not apply to "property damage" included in the "productscompleted operations hazard."

d.   **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1)   "Your product";

2)   "Your work"; or

3)   "Impaired property,"

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

e.   **Asbestos**

"Bodily injury" or "property damage" of any nature whatsoever, caused by, arising out of or relating in any way to asbestos or any asbestos containing product or material, or to the use, installation, removal, withdrawal or disposal of any such product or material.

2.   **With respect to Coverage A only, this insurance does not apply to:**

a.   **Pollution (Auto)**

1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

a)   That are, or that are contained in any property that is:

i)    Being transported or towed by, handled, or handled for movement into, onto or from an "auto";

ii)   Otherwise in the course of transit by or on behalf of the insured; or

iii)  Being stored, disposed of, treated or processed in or upon an "auto";

b)   Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto an "auto"; or

c) After the pollutants or any property in which the pollutants are contained are moved from an "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph a) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" or its parts, if:

i) The pollutants escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants; and

ii) The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in paragraphs e.1) and e.2) of the definition of "mobile equipment."

Paragraphs b) and c) above of this exclusion do not apply to "occurrences" away from premises owned by or rented to an insured with respect to pollutants not in or upon an "auto" if:

i) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto"; and

ii) The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage.

2) Any cost or expense arising out of any request, demand, order, claim or "suit" by or on behalf of a governmental authority demanding that the insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Paragraph 2) above does not apply if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by an "occurrence."

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**b. Pollution (Other Than Auto)**

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

ii) If the operations are to test for, monitor, clean up, remove contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph[illegible] and d) i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2) Any loss, cost or expense arising out of any:

a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3. With respect to Coverage B only, this insurance does not apply to:**

**a. Expected or Intended Injury or Damage**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability -- Bodily Injury or Property Damage**

"Bodily injury," or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1) [illegible]at the insured would have in the absence of the contract or agreement; or

2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be part of Supplementary Payments because of "bodily injury" or "property damage," provided:

a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Contractual Liability -- Personal Injury or Advertising Injury**

"Personal injury" or "advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1) That the insured would have in the absence of the contract or agreement; or

2) Assumed in a contract or agreement that is an "insured contract," provided the offense causing "personal injury" or "advertising injury" is committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be part of Supplementary Payments because of "personal injury" or "advertising injury," provided:

a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

d. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1) Causing or contributing to the intoxication of any person;

2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the insured:

1) Manufactures, sells or distributes alcoholic beverages;

2) Serves or furnishes alcoholic beverages for a charge whether or not such activity:

a) Requires a license; or

b) Is for the purpose of financial gain or livelihood; or

3) Serves or furnishes alcoholic beverages without a charge, if a license is required for such activity.

e. **Employers Liability**

"Bodily injury" to:

1) An "employee" of the insured arising out of and in the course of employment by the insured; or

2) The spouse, child, parent, brother or sister of that "employee" as a consequence of 1) above.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

f. **Employment-Related Practices**

"Bodily injury" or "personal injury" to:

1) A person arising out of any:

a) Refusal to employ that person;

b) Termination of that person's employment; or

c) Employment - related practices, policies, acts or omissions, such as but not limited to coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs 1) a), b), or c) above is directed.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

g. **Pollution**

1) "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual, alleged or

threatened d[illegible]arge, dispersal, seepage, migration, release or escape of pollutants.

2) Any loss, cost or expense arising out of any:

i) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

ii) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**h. Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any:

1) "Aircraft" owned by or chartered without crew by or on behalf of any insured; or

2) Watercraft 51 feet long or longer.

Use includes operation and loading or unloading.

This exclusion does not apply to:

1) A watercraft while ashore on premises you own or rent; or

2) [illegible]bility assumed under any "insured contract" for the ownership, maintenance or use of "aircraft" or watercraft.

**i. Racing**

"Bodily injury" or "property damage" arising out of the use of "autos" or "mobile equipment" in, or while in practice or being prepared for, any professional or organized racing or demolition contest or stunting activity.

**j. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products – completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden

and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Personal and Advertising Injury**

"Personal injury" or "advertising injury":

1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period; or

3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured.

o. **Advertising Injury**

"Advertising injury" arising out of:

1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

2) The failure of goods, products or services to conform with advertised quality or performance;

3) The wrong description of the price of goods, products or services; or

4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

p. **Professional Liability**

"Bodily injury," "property damage," "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

1) Legal, accounting or advertising services;

2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

3) Supervisory, inspection or engineering services;

4) Medical, surgical, dental, x-ray or nursing services or treatment;

5) Any health service or treatment;

6) Any cosmetic or tonsorial service or treatment;

7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses or similar products or hearing aid devices;

8) Ear piercing services; and

9) Services in the practice of pharmacy, but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

**SECTION II – WHEN THIS INSURANCE APPLIES**

1. "Bodily injury" or "property damage":

a. With respect to "bodily injury" and "property damage" arising out of the ownership, maintenance, use, loading or unloading, or entrustment to others of any "auto," this insurance applies only if the "occurrence" happens during the policy period.

b. With respect to "bodily injury" to:

1) An "employee" of the insured arising out of and in the course of employment by the insured; or

2) The spouse, child, parent, brother or sister of that "employee" as a consequence of 1) above,

this insurance applies only if:

1) "Bodily injury" caused by an accident occurs during the policy period; or

2) The "employee's" last day of last exposure to the conditions of employment that caused or aggravated "bodily injury" by disease occurs during the policy period.

c. With respect to any other "bodily injury" and "property damage," this insurance applies to "bodily injury" or "property damage" which occurs during the policy period, but this insurance does not apply to "bodily in-

jury" or "property damage" which occurred before the effective date shown in the Declarations or which occurs after the policy period.

2. "Personal injury" or "advertising injury":

   This insurance applies to "personal injury" or "advertising injury" only if caused by an offense committed during the policy period.

3. With respect to any "underlying insurance" which is Employee Benefits Liability Insurance, the insurance provided by Coverage A applies only to claims made against the insured according to the terms and conditions of the underlying Employee Benefits Liability Coverage.

**SECTION III -- WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Any reference to the Named Insured shall include the insured named in the Declarations but shall also include:

   a. Any of your subsidiaries;

   b. Any other organization over which you exercise control and actively manage; and

   c. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, if there is no other similar insurance available to that organization. However:

      1) Coverages A and B do not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

      2) Coverages A and B do not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

3. With respect to Coverage A, anyone who is an insured under the "underlying insurance" is an insured, but only to the extent the "underlying insurance" applies.

4. Any person or organization to whom or to which you are obligated by virtue of a written contract to provide such insurance as afforded by this Coverage Part is an insured, but only with respect to liability arising out of "your work," "your product" and to property owned or used by you.

5. Each of the following is also an insured, with respect to an "occurrence" arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of any "auto":

   a. Anyone is an insured while using any "auto" with your permission except:

      1) The owner of an "auto" you hire or borrow from one of your "employees" or a member of his or her household. This exception does not apply if the "auto" is a trailer connected to an "auto" you own;

      2) Someone using an "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours;

      3) Anyone other than your "employees," partners, a lessee or borrower of an "auto" or any of their employees, while moving property to or from an "auto"; and

      4) A partner of yours for any "auto" owned by him or her or a member of his or her household.

   b. Anyone liable for the conduct of an insured described in paragraph 5. a. above is an insured but only to the extent of that liability.

6.  Each of the following is also an insured:

    a.  Your "employees," other than your "executive officers," but only for acts within the scope of their employment by you, or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

        1)  "Bodily injury" or "personal injury":

            a)  To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

            b)  To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph 1) a) above;

            c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 1) a) or b) above; or

            d)  Arising out of his or her providing or failing to provide professional health care services.

        2)  "Property damage" to property:

            a)  Owned, occupied or used by, or

            b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

    b.  Any person (other than your "employee") or any organization while acting as your real estate manager.

    c.  Any person or organization having proper temporary custody of your property if you die, but only:

        1)  With respect to liability arising out of the maintenance or use of that property; and

        2)  Until your legal representative has been appointed.

    d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

7.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    a.  "Bodily injury" to a co-"employee" of the person driving the equipment; or

    b.  "Property damage" to property owned by, rented to, in the charge of or occupied by you, or the employer of any person who is an insured under this provision.

8.  Each of the following is also an insured with respect to any "aircraft" chartered with a pilot or crew:

    Any person using such "aircraft" and any person or organization legally responsible for its use, provided its actual use is with your permission except:

    a.  The owner, pilot or air crew thereof or any other person operating the "aircraft"; or

    b.  Any manufacturer of "aircraft," engines or aviation accessories, or any aviation sales, service or repair organization, or airport or hangar operator or any employee of any of them.

9.  With respect to any watercraft that you do not own that is less than 51 feet long, any person is an insured while operating such watercraft with your permission.

# *Exhibit B*

10. No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

SECTION IV -- LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Products--Completed Operations Aggregate Limit is the most we will pay under Coverage A and Coverage B combined for damages included in the "products--completed operations hazard."

3. The General Aggregate Limit is the most we will pay for damages under Coverage A and Coverage B combined, except:

   a. For damages included in the "products -- completed operations hazard"; and

   b. Coverages included in "underlying insurance" to which no underlying aggregate applies.

4. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay:

   a. With respect to "bodily injury" and "property damage" under Coverage A and Coverage B combined, for the sum of damages because of all "bodily injury" and "property damage" arising out of any one "occurrence."

   b. With respect to "personal injury" and "advertising injury" under Coverage A and Coverage B combined, for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

   c. With respect to Employee Benefit Liability coverage under Coverage A if included under "underlying insurance," for the sum of all damages sustained by any one "employee" or former "employee."

5. Under Coverage B, the "Retained Limit" applies as follows:

   a. To all damages because of "bodily injury" and "property damage" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of the "occurrence."

   b. To all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

   We may pay any part or all of the "Retained Limit" to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the "Retained Limit" as has been paid by us.

6. To determine the limit of our liability, all "bodily injury" and "property damage" arising out of continuous or repeated exposure to substantially the same general harmful conditions shall be considered one "occurrence."

7. The limits of insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limit of insurance.

SECTION V -- COMMERCIAL CATASTROPHE LIABILITY CONDITIONS

We have no duty to provide coverage under this Coverage Part unless you and any other involved insured have fully complied with the Conditions contained in this Coverage Part.

1. **Appeals**

   If you, any other involved insured or the underlying insurer elects not to appeal a judgment in excess of the underlying limit or the "Retained Limit," we may elect to do so at our own expense. We will pay any resulting taxable costs, disbursements and interest. The appeal does not increase the Limits of Insurance.

**2. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**3. Duties In the Event of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense whenever it appears likely it will result in a claim involving this Coverage Part. Notice should include:

1) How, when and where the "occurrence" or offense took place;

2) The names and addresses of any injured persons and witnesses; and

3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim.

b. If a claim is made or "suit" is brought against any insured, you must:

1) Immediately record the specifics of the claim or "suit" and the date received, and

2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable whenever it appears likely that such claim or "suit" will involve this Coverage Part.

c. You and any other involved insured must:

1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" whenever it appears likely that the claim will involve this Coverage Part or whenever we have assumed the duty to defend you;

2) Authorize us upon our request to obtain records and other information;

3) Cooperate with us and with the underlying insurer in the investigation or settlement of any claim or defense against the "suit";

4) Assist us or the underlying insurer upon request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

5) Comply with all the terms and conditions of any "underlying insurance."

d. If you or any other involved insured becomes responsible, under the terms of this Coverage Part, for the investigation or settlement of any claim or defense against any "suit," you and any other involved insured:

1) Must use due diligence and sound judgment to settle all such claims or "suits" that should be settled; but

2) May not make any settlement for any sum in excess of the "Retained Limit" without our approval.

e. Except as provided in paragraph d. above, no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Maintenance of "Und. ying Insurance"**

a. The "underlying insurance" described in the Declarations shall be an accurate representation of all policies issued to you and which relate to this insurance.

b. With respect to all Named Insureds covered under the terms of this Coverage Part, you must maintain the "underlying insurance" in effect during the policy period of this Coverage Part. You may not reduce the coverage or limits of insurance available without our written consent.

c. You must, as soon as practicable, report any material change in premiums charged for "underlying insurance." We may then adjust the premium for this Coverage Part in accordance with our rules and rates.

d. You must, as soon as practicable, report to us all changes in coverage provided by the "underlying insurance" including:

1) Additional Insureds newly added to the policy; and

2) Insurance coverage for exposures not previously insured by the "underlying insurance."

You will furnish, upon our request, exact copies of such changes or additional insurance.

e. Failure to comply with paragraphs a., b., c. and d. of this condition shall not invalidate this Coverage Part. In the event such a failure occurs, we shall be liable under Coverage A only to the extent we would have been liable had you complied.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separati of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer of Rights of Recovery Against Others To Us**

a. If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Any recoveries made shall be applied as follows:

1) First, to reimburse anyone who has paid damages in excess of our payments;

2) Second, reimburse us up to the amount we have paid for damages; and

3) Last, to reimburse anyone who has paid damages to which this insurance was excess.

Our share of the reasonable expenses incurred in securing any recovery shall not exceed the proportion of damages we paid to the total damages paid.

Any different method of apportioning recoveries and expenses may be used by agreement of all those who paid damages.

**9. "Underlying Insurance"**

a. In the event of bankruptcy, insolvency or financial impairment of the insurance company that issued the "underlying insurance," we shall be liable under Coverage A only to the extent we would otherwise have been liable.

b. If no coverage exists under the "underlying insurance" because you or any involved insured failed to comply with the policy

terms and conditions, we shall be liable under Coverage A and Coverage B only to the extent we would have otherwise been liable.

c. If any aggregate limit in any "underlying insurance" becomes completely used up, you must see to it that we receive written notice as soon as practicable.

**10. Two or More Coverage Parts or Policies Issued By Us**

If this Coverage Part and any other Coverage Part or policy issued to you by us or any Company affiliated with us apply, the maximum limit of liability under all Coverage Parts or policies shall not exceed the highest applicable limit of liability under any one Coverage Part or policy. This condition does not apply to any Coverage Part or policy issued by us or any affiliated Company to apply:

a. As "underlying insurance," or

b. Specifically as excess insurance over this Coverage Part.

**11. Other Insurance**

If other valid and collectible insurance is available to the insured for loss covered hereunder, this Coverage Part will be excess of such other insurance. This condition does not apply to insurance purchased specifically to be either quota share with this insurance or excess of this insurance.

**SECTION VI -- DEFINITIONS**

With respect to Coverage A, the definitions contained in the "underlying insurance" shall apply in place of the definitions shown below.

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Aircraft" means any heavier-than-air or lighterthanair aircraft designed to transport persons or property in the air or space.

3. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment" but does include self-propelled vehicles with the following types of permanently attached equipment:

   a. Equipment designed primarily for:

      1) Snow removal;

      2) Road maintenance, but not construction or resurfacing; or

      3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

5. "Employee" includes a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business.

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement,

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

That part of any contract or agreement pertaining to your business under which you assume the liability of another to pay damages because of:

a. "Bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage."

b. "Personal injury" or "advertising injury" to a third person or organization, if the contract or agreement is made prior to the offense causing the "personal injury" or "advertising injury."

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

b. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in a. above, and supervisory, inspection or engineering services;

c. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

d. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

9. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment, but does not include any vehicle defined as an "auto":

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

1) Power cranes, shovels, loaders, diggers or drills; or

2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in paragraphs a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

2) Cherry pickers and similar devices used to raise or lower workers; or

f. Vehicles not described in paragraphs a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

10. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

11. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution or abuse of process;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, if committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

12. a. "Products -- completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your products" or "your work" except:

1) Products that are still in your physical possession; or

2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

1) When all of the work called for in your contract has been completed.

2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

3) Products or operations for which the classification or manual of rules for the "underlying insurance" includes products or completed operations.

13. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

14. "Retained Limit" means the greater of:

a. The amount stated in the Declarations as Retained Limit; or

b. The amount payable as damages under any other valid and collectible insurance available to the insured, other than "underlying insurance" or insurance purchased specifically in excess of this insurance.

15. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

16. "Underlying insurance" means the self-insurance coverage or insurance afforded by the policies listed in the Schedule of Underlying Insurance contained in the Declarations, including their renewals or replacements.

17. "Your product" means:

    a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        1) You;

        2) Others trading under your name; or

        3) A person or organization whose business or assets you have acquired; and

    b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Your work" means:

    a. Work or operations performed by you or on your behalf; and

    b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    b. The providing of or failure to provide warnings or instructions.

Includes copyrighted material of the Insurance Services Office with its permission.

# NAMED INSURED

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

It is understood and agreed that Item 1. NAMED INSURED in the Declarations page is completed as follows:

Raymond J. Nicholson Trust
Raymond J. Nicholson and Mary E. Nicholson Irrevocable Trust
Raymond J. Nicholson Ventures L.L.C.
William J. Nicholson Trust
RGIS of Canada
RGIS Properties
Nicholson Bros. Investment Trust
Northfield Investments
Raymond Nicholson
Marc Properties, Inc.
RGIS Properties LLC
RGIS of Mexico
RGIS International U.K. Ltd.
Semco/RGIS Servico de Inventarios Ltd.
RGIS Fleet of Canada, Inc.
RGIS International Germany GMBH

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION -- CATASTROPHE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

This insurance does not apply to:

"Bodily injury" or "personal injury" to:

1. A person arising out of any:

   a. Refusal to employ that person;

   b. Termination of that person's employment; or

   c. Employment-related practices, policies, acts or omissions, such as but not limited to coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person as consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs 1.a., b. or c. above is directed.

   This exclusion applies:

   a. Whether the "insured" may be liable as an employer or in any other capacity; and

   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# E.R.I.S.A. EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

This insurance does not apply to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and all amendments thereto, or any other similar law.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# SECURITIES AND FINANCIAL INTEREST EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

IT IS HEREBY AGREED THAT THE FOLLOWING ADDITIONAL EXCLUSION APPLIES WITH RESPECT TO COVERAGE A AND COVERAGE B:

This insurance does not apply to:

"Bodily injury," "property damage," "personal injury," or "advertising injury" arising out of or by reason of:

A. The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

B. Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

C. Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# CHANGES TO PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE B

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE PART

A. Paragraphs 4. and 5. of COVERAGE B -- EXCESS LIABILITY OVER RETAINED LIMIT -- INSURING AGREEMENT are replaced with the following:

4. This insurance applies to "personal injury" only if caused by an offense:

a) Committed anywhere in the world; and

b) Arising out of the conduct of your business.

5. This insurance applies to "advertising injury" only if caused by an offense committed:

a) Anywhere in the world; and

b) In the course of "your advertising activities."

B. Exclusion 3.n. under Coverage B (Section I, EXCLUSIONS) is replaced by the following:

n. **Personal and Advertising Injury**

"Personal injury" or "advertising injury":

1) Arising out of an offense committed by an insured whose business is advertising, broadcasting, publishing, telecasting, or telemarketing. However, this exclusion does not apply to offenses a., b., or c. under the definition of "personal injury";

2) Arising out of, or alleged to arise out of, oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

3) Arising out of, or alleged to arise out of, oral or written publication of material whose first publication took place before the beginning of the policy period;

4) Arising out of, or alleged to arise out of, the willful violation of a penal statute or ordinance committed by, at the direction of, or with the knowledge or consent of any Insured;

5) Arising out of, or alleged to arise out of, breach of contract;

6) Arising out of, or alleged to arise out of, the failure of goods, products or services to conform with advertised quality or performance;

7) Arising out of, or alleged to arise out of, the wrong description of the price of goods, products or services;

8) Arising out of, or alleged to arise out of, infringement of patent, trademark, service mark, trade name, trade dress, trade secrets, or copyright, other than copyrighted advertising materials;

9) Arising out of, or alleged to arise out of, unfair competition; or

10) Arising out of, or alleged to arise out of, antitrust violations.

C. Exclusion 3.o. under Coverage B (Section I, EXCLUSIONS) is deleted.

D. The definitions of "advertising injury" and "personal injury" in DEFINITIONS (Section VI) are replaced by the following:

1. **"Advertising injury"** means injury, other than "bodily injury" or "personal injury," arising solely out of one or more of the following offenses committed in the course of "your advertising activities":

a. Misappropriation of advertising ideas;

b. Infringement of copyrighted advertising materials;

c. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

d. Oral or written publication of material that violates a person's right of privacy.

11. **"Personal injury"** means injury, other than "bodily injury" or "advertising injury," arising solely out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, if committed by or on behalf of its owner, landlord, or lessor;

d. Oral or written publication of material that slanders or libel a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

E. The following definition is added to DEFINITIONS (Section V):

**"Your advertising activities"** means the promotion of your goods, products, services, name or image through printed or electronic media.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

# MANUSCRIPT FORM

## AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CURRENCY CLAUSE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM**

The following paragraph is added to SECTION V - - COMMERCIAL CATASTROPHE LIABILITY CONDITIONS:

The following exclusion is added to Coverage A and Coverage B (Section I, COVERAGES, EXCLUSIONS, Paragraph 1.)

All amounts of insurance, underlying insurance, deductibles, limits of liability or other monetary amounts in or endorsed to this policy are in terms of United States Dollars, or fractions thereof (unless otherwise noted) and that losses, if any, will be adjusted and paid in United States Dollars.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

# FOREIGN LIABILITY FOLLOWING FORM

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of an "occurrence" outside the United States of America, its territories or possessions, or Canada.

However, if insurance for "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of an "occurrence" outside the United States of America, its territories or possessions, or Canada is provided by an underlying policy listed in the Schedule of Underlying Insurance:

A. This exclusion shall not apply; and

B. The insurance provided by our policy will not be broader than the insurance coverage provided by the underlying policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# MICHIGAN CHANGES

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE PART

A. 1. The second paragraph of COVERAGE A -- EXCESS LIABILITY OVER UNDERLYING INSURANCE -- INSURING AGREEMENT (Section I) pertaining to Employee Benefits Liability Coverage is deleted.

2. Paragraph 3. of Section II -- WHEN THIS INSURANCE APPLIES is deleted.

3. Any other reference with regard to Employee Benefits Liability Coverage is deleted.

B. Paragraph 5. of SUPPLEMENTARY PAYMENTS (Section I) is replaced by the following:

5. Prejudgment interest awarded against the insured on that part of the judgment we pay.

C. With respect to Condition 3., Duties in the Event of Occurrence, Offense, Claim or Suit (Section V):

1. Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

2. The last sentence of paragraph 3.b. is deleted.

3. The following is added:

f. Failure to give any notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

D. Condition 10., Two or More Coverage Parts or Policies Issued by Us (Section V), is deleted.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# AUTOMOBILE LIABILITY FOLLOWING FORM

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any "auto."

However, if insurance for such "bodily injury" or "property damage" is provided by an underlying policy listed in the Schedule of Underlying Insurance:

A. This exclusion shall not apply; and

B. The insurance provided by our policy will not be broader than the insurance coverage provided by the underlying policy listed in the Schedule of Underlying Insurance.

Notwithstanding A. and B. above, this endorsement does not modify, replace or amend SECTION I -- EXCLUSIONS 1.a. or 2.a.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# CANCELLATION NOTICE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM**

We may cancel this policy. If we cancel because of non-payment of premium we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason we must mail or deliver to you not less than 90 days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in item 1. in the Declarations will be sufficient to prove notice.

All other terms and conditions of this policy remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

# NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

A. It is agreed that the Pollution Exclusions contained in Section I -- EXCLUSIONS, subparagraphs 2.a., 2.b. and 3.g., are deleted in their entirety and replaced by the following:

2. Pollution

a. This policy does not apply to:

1) Any "bodily injury," "personal injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a) At or from premises owned, rented, or occupied by the "insured" or that the "insured" formerly owned, rented or occupied;

b) At or from any site or location used by or for the "insured" or others for the handling, storage, disposal, or treatment of waste;

c) Which are at any time transported, handled, treated, disposed of, or processed as waste by or for the "insured" or any person or organization for whom the "insured" may be legally responsible, or

d) At or from any site or location on which the "insured" or any contractors or subcontractors working directly or indirectly on behalf of the "insured" are performing operations:

i) If the "pollutants" are brought on or to the site or location in connection with such operations; or

ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the "pollutants."

2) Any loss, cost or expense arising out of any governmental direction or request that the "insured" test for, monitor, clean up, remove, contain, treat, or neutralize "pollutants."

As used in this endorsement, "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

b. Provided, however, that this exclusion does not apply to:

1) Discharge, dispersal, seepage, migration, release, or escape directly or indirectly caused by "hostile fire," explosion, lightning, windstorm, vandalism or malicious mischief, riot and commotion, flood, earthquakes, collision or of a motor vehicle, "mobile equipment," aircraft, or automatic sprinkler leakage; or

As used in this endorsement, "hostile fire" means one which becomes uncontrollable or breaks out from where it intended to be.

2) "Bodily injury" or "property damage" which is within the "products-completed operations hazard."

c. This exclusion will also not apply if the discharge, dispersal, seepage, migration, release or escape of "pollutants" was not a result of a named peril occurrence as defined in b. above and meets all the following conditions:

1) It was accidental and neither expected nor intended by the "insured." This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, or release was a result of an attempt by the "insured" to mitigate or avoid a situation where substantial third party "bodily injury" or "property damage" could occur;

2) It was demonstrable as having commenced at a specific date during the term of this policy;

3) Its commencement became known to the "insured" within seven (7) calendar days;

4) Its commencement was reported in writing to the Company within twenty one (21) days of becoming known to the "insured"; and

5) Reasonable effort was expended by the "insured" to terminate the situation as soon as conditions permitted.

d. Nothing contained in b. or c. of this endorsement shall operate to provide any coverage with respect to:

1) Any site or location used by the "insured," or by others on behalf of the "insured," for the handling, storage, dispersal, dumping, processing or treatment of waste material, or third party claims arising from such site;

2) Any fines or penalties;

3) Any cleanup costs ordered by the Superfund Program, or any state or local government authority. However, this specific exclusion 3) shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of the governmental authority;

4) Acid Rain; or

5) Cleanup, removal, containment, treatment, detoxification or neutralization of "pollutants" on premises the "insured" owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said "pollutants."

6) Water "pollution" caused by oil or its derivatives.

B. It is further agreed that as solely respects any coverage granted by this endorsement:

1. The RETAINED LIMIT specified in Item 4. in the Declarations is amended to 1,000,000.

C. Insuring Agreement Section I – COVERAGE B, paragraph 1. is deleted and replaced by the following:

1. We will pay those sums that the "insured" becomes legally obligated to pay as damages, because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies, but only if "underlying insurance" does not apply.

We shall not be called upon to assume charge of the investigation, or of any "suit" brought or proceedings against the "insured," but shall have the right and be given the opportunity to be

associated in the defense and trial of any such "suits" or proceedings relative to any "occurrence" which in the opinion of the Company, may create liability on the part of the Company under the terms of this policy. If the Company avails itself of such right and opportunity, the Company shall do so at its own expense.

a. The amount we will pay is limited as described in SECTION IV – LIMITS OF INSURANCE;

b. This insurance applies only to "bodily injury," "property damage," "personal injury" and "advertising injury" described in SECTION II -- WHEN THIS INSURANCE APPLIES;

c. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result;

d. If for any reason we are prevented from performing our duty to defend the "insured" against any "suit," we will reimburse the "insured" for any expense incurred at our request or with our written consent;

e. Our right and duty to defend end when we have used up the limit of insurance available under this Coverage Part in the payment of judgments or settlements under Coverages A and B combined; and

f. We will have no duty to defend the "insured" against any "suit" seeking damages to which this insurance does not apply.

D. In the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either the "insured" or the Company, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality , shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and misconduct by the arbitrators. The decision will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in or in the vicinity of Long Grove, IL. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration of the American Arbitration Association.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# AMENDMENT OF INSURING AGREEMENT -- KNOWN INJURY OR DAMAGE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL CATASTROPHE LIABILITY COVERAGE FORM

The following language is added to SECTION II -- WHEN THIS INSURANCE APPLIES:

4. Subject to all other terms and conditions in this section, Coverages A and B of this insurance applies to "bodily injury," "property damage," "personal injury" or "advertising injury" only if:

   a. Prior to the policy period, no insured listed under paragraph 1. of SECTION III -- WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence," offense or claims, knew that the "bodily injury," "property damage," "personal injury" or "advertising injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury," "property damage," "personal injury" or "advertising injury" occurred, then any continuation, change or resumption of such "bodily injury," "property damage," "personal injury" or "advertising injury" during or after the policy period will be deemed to have been known prior to the policy period;

   b. "Bodily injury," "property damage," "personal injury" or "advertising injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under paragraph 1. of SECTION III -- WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence," offense or claims, includes any continuation, change or resumption of that "bodily injury," "property damage," "personal injury" or "advertising injury" after the end of the policy period; or

   c. "Bodily injury," "property damage," "personal injury" or "advertising injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph 1. of SECTION III -- WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence," offense or claims:

      1) Reports all, or any part, of the "bodily injury," "property damage," "personal injury" or "advertising injury" to us or any other insurer;

      2) Receives a written or verbal demand or claim for damages because of bodily injury," "property damage," "personal injury" or "advertising injury"; or

      3) Becomes aware by any other means that "bodily injury," "property damage," "personal injury" or "advertising injury" has occurred or has begun or has begun to occur.

All other terms and conditions of the policy remain unchanged.

# MICHIGAN CHANGES -- CANCELLATION AND NONRENEWAL

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CATASTROPHE LIABILITY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
ELECTRONICS ERRORS AND OMISSIONS LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE PART

* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. The CANCELLATION Common Policy Condition is amended as follows:

1. Paragraph 1. is replaced by the following:

   The first Named Insured shown in the Declarations may cancel this policy or any coverage part by mailing or delivering to us or our authorized agent advance notice of cancellation.

2. Paragraph 3. is replaced by the following:

   We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

3. Paragraph 5. is replaced by the following:

   If this policy or any coverage part is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. The following Condition is added and supersedes any other provision to the contrary:

NONRENEWAL

If we decide not to renew this policy or any coverage part, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing shall be sufficient proof of notice.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

Includes copyrighted material of the Insurance Services Office with its permission.