```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LUMBERMENS MUTUAL CASUALTY        :
COMPANY,                          :
                                  :
           Plaintiff,             :    08 Civ. 1316 (HB)
                                  :
         -against-                :    OPINION & ORDER
                                  :
RGIS INVENTORY SPECIALISTS, LLC,  :
CAMRAC INC. d/b/a ENTERPRISE      :
RENT-A-CAR, and ROBERT M. BIRARDI,:
                                  :
           Defendants-Counterclaimants. :
-----------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., United States District Judge:**

Plaintiff Lumbermens Mutual Casualty Company ("Plaintiff" or "Lumbermens"), an excess liability insurer, filed this action on February 8, 2008, against Defendants RGIS Inventory Specialists, LLC ("RGIS"), Robert Birardi ("Birardi"), and Camrac, Inc., doing business as Enterprise Rent-A-Car ("Camrac") (collectively, the "Defendants" or "Insureds"). Lumbermens sought a declaratory judgment finding that it was not required, under the terms of an excess insurance policy it issued to RGIS, to contribute to a judgment in a personal injury action filed against the defendants by David Shore, the brother of Robert Shore, who was injured when he was struck by a minivan owned by Camrac and driven by Birardi while employed by RGIS.

Defendants won summary judgment, and Lumbermens appealed to the Court of Appeals for the Second Circuit. While the case was on appeal, the underlying personal injury litigation settled, and the Second Circuit remanded with instructions to consider whether the settlement rendered this declaratory judgment action jurisdictionally moot. For the reasons that follow, I conclude that the action is not moot, and that my previous grant of summary judgment to Defendants should be reinstated.

## I. BACKGROUND

The excess policy issued by Lumbermens required RGIS to provide notice to Lumbermens of an "occurrence," "offense," "claim" or "suit" as soon as practicable "whenever it appears likely" that the excess policy would be implicated. *See* Excess Policy, Section V, ¶ 3. Defendants did not inform Lumbermens of the collision or the resulting Shore litigation until the

1

eve of trial, approximately five years after the collision and three years after the action was filed. The trial resulted in a jury verdict of over $11 million. After the trial court entered judgment for Shore, Defendants filed a notice of appeal to the Connecticut state appellate court.

Lumbermens commenced this action for a declaratory judgment on February 8, 2008, while the Shore trial was ongoing, and argued that it could not be bound by the terms of the excess policy to contribute to a judgment in the Shore litigation, because it received untimely notice of that litigation. On cross-motions for summary judgment, I concluded that the notice provided to Lumbermens was timely, and in any event, Lumbermens was not prejudiced by the timing of the notice. By order dated January 21, 2009, I granted summary judgment to Defendants and dismissed Lumbermens' complaint seeking a declaratory judgment. See Docket No. 35.

Lumbermens appealed to the Second Circuit. While the appeal to the Second Circuit was pending, the parties to the Shore litigation participated in formal mediation, and Shore accepted an offer to settle the case for $6 million. The mediator informed Lumbermens of the settlement. Thereafter, Lumbermens sent a letter to Defendants to say that it would contribute $4 million to the settlement, but that any payment would be "subject to an express reservation of rights by Lumbermens to recoup the full amount thereof from its insureds on the bases asserted by Lumbermens [in this action]." Pl.'s Ex. 1, Rosenthal Letter of Aug. 20, 2009. In other words, if the federal courts ultimately determined that Defendants were not entitled to coverage because they had failed to give timely notice of the accident, Lumbermens would recoup its contribution to the Shore settlement.

Defendants immediately took issue with Lumbermens' assertion of a right to recoup. Their lawyer wrote, "[M]y clients do not accept that Lumbermens has any such recoupment rights to reserve, and will not consent to any such reservation on Lumbermens' part." Id., Berland Letter of Aug. 21, 2009. Defendants also declared that Lumbermens was bound by an earlier, purportedly unconditional offer to contribute $4 million to a $6 million settlement. Id. In response, Lumbermens asserted that the initial offer to contribute $4 million lapsed because it was never accepted, and stated that the new offer was conditioned on a reservation of rights as to recoupment. Id., Rosenthal Letter of Aug. 24, 2009. These positions were reiterated in further letters that the parties exchanged during the next several days, in which both parties reserved all their rights and waived none of them. See id., Letters of Aug. 25, 26.

On September 3, 2009, counsel for Shore wrote to Lumbermens to confirm that the <u>Shore</u> litigation had settled for $6 million, of which $4 million would be funded by Lumbermens.  <u>Id.</u>, Weber Letter of Sept. 3, 2009.  The letter acknowledged that Lumbermens had asserted a right to recoup, but disclaimed any position as to recoupment on Shore's part.  <u>Id.</u>  On November 3, 2009, Lumbermens tendered two checks, totaling $4 million, to lawyers for Shore, and stated in the accompanying cover letter, "Lumbermens is funding this settlement subject to a reservation of rights regarding recoupment in the action pending in the SDNY/2d Cir."  <u>Id.</u>, Rosenthal Letter of Nov. 3, 2009.  The same day, Defendants reasserted their position that Lumbermens had no recoupment rights to reserve.  <u>Id.</u>, Berland Letter of Nov. 3, 2009.

The parties informed the Second Circuit of the <u>Shore</u> settlement, and at the Court's request, submitted supplemental materials that analyzed the effects of the settlement on the pending appeal.  In those papers, Lumbermens claimed that its $4 million payment was subject to an express reservation of rights to recoup that amount from the defendants in the event that Lumbermens prevailed on appeal.  Defendants argued that Lumbermens' participation in the <u>Shore</u> settlement eliminated any basis it might have had for challenging its obligation to fund the settlement.

The Second Circuit determined that if defendants were correct, the declaratory judgment action filed by Lumbermens might be moot.[1]  Although the parties urged the Court of Appeals to decide the issues presented on appeal without regard to the issue of mootness, the court declined to do so, because courts are "not empowered to decide moot questions."  <u>Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC, et al.</u>, 356 Fed. App'x 452, 453 (2d Cir. 2009) (internal quotations omitted).  The Court of Appeals vacated my order granting summary judgment and remanded for consideration of whether the action is moot.  <u>Id.</u>  At my request, the parties prepared memoranda to address the question of jurisdictional mootness.

## II. DISCUSSION

### A. Mootness

"Under Article III, section 2 of the Constitution, federal courts lack jurisdiction to decide questions that cannot affect the rights of litigants in the case before them."  <u>Davis v. New York</u>, 316 F.3d 93, 99 (2d Cir. 2002).  "Mootness, in the constitutional sense, occurs when the parties

---

[1] See <u>Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC, et al.</u>, 356 Fed. App'x 452, 453 (2d Cir. 2009) ("Although the defendants do not say so explicitly, the implication of their argument is that the declaratory judgment action, and this appeal, are now moot.").

3

have no legally cognizable interest or practical personal stake in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties." <u>ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.</u>, 483 F.3d 85, 94 (2d Cir. 2007) (internal quotations omitted).  Where the plaintiff has no legally cognizable interest in the outcome of the litigation, there is no longer a "Case" or "Controversy" within the meaning of Article III, and the court must dismiss the case for lack of subject matter jurisdiction.  <u>Id.</u>

The question in determining whether a request for declaratory relief has become moot is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>Preiser v. Newkirk</u>, 422 U.S. 395, 402 (1975).  As the Second Circuit held when it remanded this case, "the question of mootness is, at least in part, factual, dependent as it is on the terms and circumstances of the settlement."  356 Fed.App'x at 453.

Here, the question of mootness rests on whether Lumbermens has a right to recoup the $4 million that it paid toward the settlement in the <u>Shore</u> litigation. Without a right to recoup, Lumbermens cannot seek a declaratory judgment from this Court to the effect that Defendants are not entitled to precisely the coverage that Lumbermens has already provided.  Surprisingly, Lumbermens does not directly address the question of mootness in its recent briefs, and Defendants do so only in conclusory terms, to assert that "this action is not moot in the jurisdictional sense as there is an existing dispute among the parties over which this Court has jurisdiction." Def's Mem. 12.  For the following reasons, I conclude that Lumbermens has a right of recoupment with respect to its contribution to the <u>Shore</u> settlement and therefore has a legal interest adverse to the Defendants.  Correspondingly, this Court maintains subject-matter jurisdiction.

**B. The Right of Recoupment Under Michigan Law**

"Federal courts sitting in diversity cases will…apply the substantive law of the forum state." <u>Travelers Ins. Co. v. 633 Third Associates</u>, 14 F.3d 114, 119 (2d Cir. 1994) (citing <u>Erie R.R. Co. & Tompkins</u>, 304 U.S. 64 (1938)).  The excess policy issued by Lumbermens does not contain a choice of law provision, but the "center of gravity" in this action falls in Michigan, where RGIS is located.  For the reasons set forth in my decision of January 21, 2009, Michigan law governs this dispute.  The parties were unable to locate any authority under Michigan law

regarding the funding of a settlement subject to a reservation of rights.  See Pl's Mem. 2; Def's Mem. 8.

"When addressing an uncertain issue of state law, 'the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.'" Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 199 (2d Cir. 2003).  Although a federal court is "not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court would decide otherwise." DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005).  The federal court may also refer to law review commentaries and decisions from other jurisdictions on the "majority rule" to determine what the state's highest court would decide if faced with the issue.  See ACME Roll Forming Co. v. Home Ins. Co., 31 Fed.App'x. 866 (6th Cir. 2002).

State courts differ widely on the question whether an insurer may recoup defense or settlement costs from its insured.[2]  A significant number of jurisdictions permit an insurer defending under a reservation of rights to seek reimbursement of funds expended on either the defense or settlement of noncovered claims.  See Travelers Prop. Cas. Co. v. Hillerich & Bradsby Co., Inc., 597 F.3d 257 (6th Cir. 2010) (predicting that Kentucky would allow recoupment of settlement costs for noncovered claims); Nobel Ins. Co. v. Austin Powder Co., 256 F.Supp.2d 937, 940 (W.D. Ark. 2003) (insurer must expressly include reimbursement in reservation of rights letter to reserve that right); United Nat'l Ins. Co. v. SST Fitness Corp., 309 F.3d 914 (6th Cir. 2002) (allowing insurer to recoup defense costs under an implied-in-fact contract theory under Ohio law); Blue Ridge Ins. Co. v. Jacobsen, 22 P.3d 313 (2001).  However, other jurisdictions have held that an insured must consent to the insurer's reservation of rights as to recoupment.  See, e.g., Excess Underwriters at Lloyd's London, et al. v. Frank's Casing Crew & Rental Tools, Inc., 246 S.W.3d 42, 48-50 (Tex. 2008).

Although the Michigan Supreme Court has not addressed this question, decisions of other courts in Michigan support a prediction that Michigan would allow an insurer to recoup a contribution to a settlement, where it is ultimately determined that the insured was not entitled to

---

[2] For a state-by-state survey of the right of recoupment, see Angela R. Elbert & Stanley C. Nardoni, Buss Stop: A Policy Language Based Analysis, 13 CONN. INS. L.J. 61 (2006).

coverage under the insurance policy.  In NCMIC Ins. Co. v. Dailey, 2006 WL 2035597 (Mich. Ct. App. July 20, 2006), an insurer sought to recover attorneys fees that it paid while defending a law firm in a malpractice suit, following rescission of the underlying insurance contract for misrepresentation.  Id. at *5.  The NCMIC court held the insurer could recover the costs of defense, where it had written two letters purporting to reserve its rights, and only later sent a letter stating its intent to seek restitution for the attorneys fees.  The court acknowledged that other jurisdictions had refused to allow insurers to recoup defense costs, but found that Michigan would allow for recoupment based on the doctrine of unjust enrichment.  Defendants argue that Michigan law prohibits courts from utilizing the doctrine of unjust enrichment where a written agreement governs the parties' transaction.  See King v. Ford Credit Motor Co., 668 N.W.2d 357, 371 (Mich. Ct. App. 2003); See Def.'s Ex. 2 at 13.  Although the excess policy issued by Lumbermens governs the relationship between Lumbermens and the defendants, it does not directly address whether defense or settlement costs may be recovered in the event that the insureds were ultimately not entitled to coverage.  Therefore, the doctrine of unjust enrichment provides at least some support for Lumbermens' theory that Michigan would allow a right of recoupment.

The preference of Michigan courts for an extracontractual right to recoup is further demonstrated by Travelers Prop. Cas. Co. v. R.L. Polk & Co., 2008 WL 3843512 (E.D. Mich. Mar. 24, 2008), which held that plaintiff, an insurer, could recoup defense costs from defendant, its insured, for any claims "which clearly and unequivocally do not give rise to a duty to defend." Id. at *2.  The district court rejected the "modern trend" pursuant to which insurers are not entitled to reimbursement, relying instead on NCMIC and Buss v. Superior Court, 65 Cal. 4th 35 (1997) for the proposition that an insurer has a duty to defend any claim which is arguably covered by an insurance policy.  The district court held that the insurer may then recoup the cost of defending those claims that fall outside the scope of the policy.  2008 WL 3843512 at *3.

Lumbermens asserts its right to recoup its $4 million contribution to the Shore settlement, which distinguishes this case from those discussed above.  I find instructive the Sixth Circuit's recent prediction in Hillerich that Kentucky would allow a right of recoupment, which as I understand it would, by analogy, allow Lumbermens' claim.  That Court held that Kentucky (and Michigan is in the same Circuit) would allow an insurance company to seek reimbursement of settlement contributions for non-covered claims, where the insurer funded the settlement under a reservation of rights to which the insured objected, and the insured retained "meaningful control"

6

of the defense and negotiation process in the underlying litigation. See Hillerich, 597 F.3d at 265. Similarly, in the instant action, Lumbermens funded the Shore settlement subject to a reservation of rights to which Defendants objected; Defendants also maintained control of the litigation and settlement of the Shore action.[3]

Although not free from doubt, given the underlying policy of Michigan law, its cases on reimbursement of attorneys fees, and its specific rules on the reservation of rights, I conclude that Michigan would follow the logic of Hillerich and allow Lumbermens to seek recoupment of settlement costs. Since Lumbermens may be able to recoup the money it contributed to the settlement of the Shore litigation if it prevails on the merits here or at the Second Circuit, there remains a controversy "between parties having adverse legal interests." See Preiser, 422 U.S. 395 at 402. Thus, this action is not moot. Since I determined that this court has subject-matter jurisdiction, I reinstate my grant of summary judgment along with the reasoning set forth in my January 21, 2009 decision.

### III. CONCLUSION

At the request of the Second Circuit, I have determined that Lumbermens' action for a declaratory judgment is not moot. I hereby REINSTATE my opinion of January 21, 2009, in which I DENIED Lumbermens' motion for summary judgment and GRANTED Defendants' motion for summary judgment. The complaint is hereby DISMISSED and the Clerk of Court is instructed to remove this matter from my docket. Pursuant to the mandate of the Second Circuit, jurisdiction may be restored to that Court for further review by letter from any party.

SO ORDERED
May 20, 2010
New York, New York

_____
U.S.D.J.

---

[3] To support its prediction that Kentucky would allow an insurer to recoup settlement costs, the Sixth Circuit cited three aspects of Kentucky law, all of which parallel Michigan law: "[1] Kentucky, like most jurisdictions, has a longstanding preference for encouraging fair and reasonable settlement of lawsuits…[2] an insurance company can defend an insured under a reservation of rights…and finally, [3] Kentucky imposes a broad duty to defend on insurers." Hillerich, 597 F.3d at 265. Michigan law follows Kentucky law on all three fronts. See Precopio v. Detroit, 330 N.W.2d 802 (1982) (public policy encourages settlements); Kirschner v. Process Design Associates, Inc., 592 N.W.2d 707 (Mich. 1999) (insurer may defend under a reservation of rights as to noncovered claims); Citizens Ins. Co of America v. Ladi, 2009 WL 2168929 (Mich. Ct. App. 2009) ("An insurance company has a broad duty to defend its insured…not limited to meritorious suits…so long as the allegations against the insured even arguably come within the policy coverage.").